ARTHUR GROSZEHMIGEM v. THE STATE.

No. 67.   Decided October 13, 1909.

Rehearing denied November 3, 1909.

**1.—Assault with Intent to Murder—Jury and Jury Law—Challenge for Cause—Newspaper Reports.**

Where, upon trial for assault to murder, the juror, whom defendant challenged for cause, stated that he could and would lay aside whatever opinion he had as to the guilt or innocence of defendant based upon newspaper reports, and that he could go into the jury box and give defendant a fair and impartial trial according to the law and the evidence, there was no error in overruling defendant's challenge, although he had exhausted his peremptory challenges. Following Parker v. State, 45 Texas Crim. Rep., 334, and other cases.

**2.—Same—Evidence—Res Inter Alios Acta.**

Upon trial for assault to murder, testimony with reference to a financial transaction between an uncle of the injured party and the defendant, in regard to a certain note or check in favor of said uncle, was correctly excluded, as these were matters between other parties, and did not bear upon the assault of the injured party.

**3.—Same—Argument of Counsel.**

Upon trial for assault to murder, where the court instructed the jury not to consider the remarks of State's counsel, to the effect that defendant would be lucky if the jury gave him the highest punishment, as he might have been killed had the parents of the injured party been of a different nationality, there was no error.

**4.—Same—Charge of Court—Requested Charge.**

Where, upon trial for assault to murder, the court charged the jury upon the issues in evidence, and the appellant complained of the court's action in refusing to give certain requested instructions which were only mentioned in the motion for new trial, and were not contained in the record, there was no error.

**5.—Same—Charge of Court—Accidental Killing.**

Where, upon trial for assault to murder, defendant claimed accidental killing, and the court sufficiently charged upon this theory of the case, there was no error.

**6.—Same—Charge of Court—Scuffle—Words and Phrases.**

Where, upon trial for assault to murder, the evidence of the State showed that defendant pulled his pistol and presented it at the injured party, and that she grabbed and pushed it away, and by this means it was discharged and hit the injured party, and defendant claimed an accidental discharge, etc., there was no error in the court's charge that it referred to this as a scuffle between the parties.

Appeal from the District Court of Bexar.   Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of assault with intent to murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Chambers, Hertzberg & Barrett,* for appellant.—On question of challenge of juror: Stagner v. State, 9 Texas Crim. App., 440;

Shannon v. State, 34 Texas Crim. Rep., 5; Spear v. State, 16 Texas Crim. App., 98; Gallaher v. State, 40 Texas Crim. Rep., 296, 50 S. W. Rep., 388; Ward v. State, 19 Texas Crim. App., 664; Tooney v. State, 8 Texas Crim. App., 452. On question of accidental shooting: Wheeler v. State; 34 Texas Crim. Rep., 350; Winters v. State, 37 Texas Crim. Rep., 582. On question of argument of counsel: Washington v. State, 23 Texas Crim. App., 336; Coleman v. State, 49 Texas Crim. Rep., 82, 90 S. W. Rep., 499.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of assault with intent to murder, his punishment being assessed at ten years confinement in the penitentiary.

Substantially the evidence is that appellant married the daughter of Gus Real. There came up some family disturbances, and his wife finally went to her father's home and refused further to live with appellant. Previous to his wife returning to her father, his sister-in-law, the assaulted party, was at appellant's residence in the city of San Antonio assisting in adjusting matters about the place. When this was over she desired to return home and appellant accompanied her. Enroute her testimony is that appellant made love to her and wanted her to run away with and marry him; that they would go to Mexico. This she declined. Later on appellant went to her father's residence and at some point about the premises away from the residence, renewed his offers of love and marriage accompanied by threats in case of refusal. On the day of the assault the assaulted party and her sister and brother were in a wagon returning from San Antonio to their residence some miles in the country when they met appellant, who had been down to the family residence to interview his wife. A conversation occurred, which was interrupted by appellant's horse and buggy going away, which he followed, and the wagon drove on. When they reached the gate near the residence they found appellant had preceded them to that point, had hitched his horse and was waiting their arrival. When they came, he walked up to the wagon and engaged them in a conversation, the details of which we deem unnecessary to narrate. While so engaged he drew his pistol. The State's evidence shows that he presented it at the breast of the assaulted girl. She grabbed the pistol and pushed it away. The pistol fired and she was shot in the stomach. The contention of the State is that it was an intentional shooting. Appellant's contention was that he had the pistol out and did not point it, and that the girl in seizing the pistol caused it to fire accidentally; that he had no intention of shooting her. There was quite a lot of testimony in regard to the family troubles. Appellant testified he stopped the wagon in order to request an intervention on the part

of those in the wagon to induce his wife to return and live with him. He denied everything in regard to offers of love and marriage to the assaulted party, stating that he had no intention to do so, and never made any such offers, and that at the time of the shooting was trying to induce them to get his wife to return and live with him; that "he only loved his wife and child." It is agreed that appellant had furnished money to his father-in-law on two occasions, at one time $125 and the other $100. His contention is that his father-in-law compelled him to furnish the money or ordered him to do so, while the evidence for the State is to the effect that he furnished it willingly for the support of his wife and child. There is also evidence that a note of $1,400, guaranteed by a lien on land was also delivered by appellant to the father-in-law. Appellant's contention is that this $1,400 note was forced out of him in order to get his property away from him. The State's evidence is to the effect that the note was turned over willingly by appellant for the benefit of his wife and child, at any rate for the child. This perhaps is a sufficient statement of the case to review the questions.

1. The first bill of exceptions was reserved to the ruling of the court permitting the witness Hildebrand to sit as a juror in the case. The bill recites that in answer to questions propounded by counsel for appellant he stated that he had formed an opinion as to the guilt or innocence of the defendant such as would influence his action in arriving at a verdict. Challenge for cause was interposed. The court signed the bill with the qualification that the juror stated that while he had formed an opinion from reading the newspapers as to the guilt or innocence of the defendant, he could lay same aside and not be influenced thereby and could try the case according to law and under the evidence as shown by answers which were set out in exhibit A attached to and made a part of the bill. To these questions bearing upon this particular phase of it the witness answered: "The opinion I have would not influence me as a juror, but it would take evidence to remove it," and this in regard to the guilt or innocence of the accused. Upon a further examination he stated that he could and would lay aside whatever opinion he had as to the guilt or innocence of defendant and go into the jury box and give him a fair and impartial trial according to law. The court then asked witness, "What about your opinion?" Witness answered: "The opinion I have formed is from reading the papers." The Court: "Simply from reading newspapers?" A. "Yes, sir, I know nothing of the facts except what I saw in the papers—if what the papers said was true then I have formed an opinion." The Court: "Is it just from newspaper reading; you have not talked with any of the witnesses?" A. "No, sir, I know nothing about it." The Court: "The opinion you have is from the newspapers?" A. "From reading the papers alone." The Court: "Cannot you lay aside your opinion and go

into the jury box and try the case according to the law and the evidence?" A. "I think so." By Mr. Baker: "Give the court a positive answer." A. "I could and would." By Mr. Chambers: "I believe that you answered that you had formed an opinion from reading the papers and it would require evidence to remove that opinion?" A. "I have simply an opinion." Q. "And it would require evidence to remove it." A. "Yes, sir." The Court: "Will you try this man according to any opinion you may have formed from reading the newspapers?" A. "No, sir, it is merely an opinion from reading the papers, it is not a definite conclusion." The Court: "Would that opinion influence you in finding a verdict?" A. "It would not influence me a particle." The Court: "Would you leave it aside and try the case according to the law and the evidence?" A. "Yes, sir." The Court: "I think he is qualified." By Mr. Chambers: "We except to the juror because we consider him disqualified and we desire it to be shown that we have exhausted all our challenges." The Court: "I understand that it will not require any evidence to remove that opinion." A. "No, sir, it is formed from reading the papers." The Court: "You can go into the jury box free from any opinion and be ready and willing to receive law and evidence and decide according to the law and evidence." A. "Yes, sir." The Court: "He is qualified." Mr. Chambers: "Note our exception."

The contention by appellant is that the juror was disqualified, and the inference is that he had exhausted his peremptory challenges. The question is whether or not the juror was disqualified from sitting in the case. Under the decisions we think this must be answered in the negative. See Morrison v. State, 40 Texas Crim. Rep., 473; Tellis v. State, 42 Texas Crim. Rep., 574; Trotter v. State, 37 Texas Crim. Rep., 468; Parker v. State, 45 Texas Crim. Rep., 334. These cases seem to be in point as well as some of the authorities cited in the above citations.

Another bill of exceptions recites that appellant offered in evidence a check for three hundred and forty-eight dollars and five cents ($348.05) drawn on the Alamo National Bank in favor of Adolph Real, an uncle of the prosecuting witness, and said money was retained by said relative. It is contended this check was admissible to show a conspiracy. Appellant's theory was that the relatives of his wife had taken all of the property he had, and caused the separation of himself and wife. This check was offered in evidence while appellant was on the stand in his own behalf. The bill is signed with the qualification that the above transaction occurred after the date of the alleged shooting and occurred between defendant and one Adolph Real, an uncle of the prosecuting witness and was irrelevant and immaterial and res inter alios acta and having occurred after the assault could not effect the case as shown by Exhibit A attached.

The exhibit shows, in substance, as follows: That the check was for $348.05 drawn on the Alamo National Bank. The question was asked, "How did he manage to cash that check?" Mr. Baker stated: "That is a transaction which occurred between other parties." The Court: "Yes, I do not see anything material in that." Mr. Chambers: "I want to show that there was a conspiracy existing." Mr. Baker: "Let counsel show the conspiracy first." Mr. Chambers: "There was a conspiracy existing to get the property, and I am showing that the relatives of the wife had the property. We expect to show by this witness that Mr. Real came and got the check for $348.05, and after cashing it, the money was to be brought to defendant and he has not seen Mr. Real since. Mr. Real is not the father of the defendant's wife, but he is a relative and knew all about the matter, and he got the check and kept the money." Mr. Baker: "When was this money supposed to have been gotten?" Mr. Chambers: "We will show all that." A. "It was after the shooting." The Court: "It has absolutely no bearing on this case." Mr. Chambers: "We except." This is the bill with the exhibit. We are not cited to any authorities that would make this transaction admissible as evidence. Nor do we understand how a financial transaction occurring between an uncle of the injured woman and appellant in regard to the $348.05 could have affected the prior transactions which resulted in the shooting of the girl. It would seem from the exhibit to the bill that Adolph Real kept the money himself; such is the statement of counsel. We are of opinion that as this matter is presented this character of testimony was not admissible to show why appellant shot his sister-in-law or throw any light upon that transaction. These were matters occurring between other parties and so far as the bill would indicate without any bearing at all on the assault or the trouble between appellant resulting in the shooting of his sister-in-law. We are, therefore, of opinion there was no error in rejecting this testimony.

Another bill of exceptions is reserved to the closing remarks of the district attorney wherein he used the following language to the jury: "That defendant would be indeed lucky even if he got the limit, because, had parents of Martha Real been of a different nationality, he would have been killed." Appellant then and there, at the time of the making of said remark, excepted and tendered his bill. This bill is qualified as follows by the court: "That counsel for the State was stopped from making such remarks and ordered to confine himself to the facts and the jury was instructed by the court not to consider the remarks of the district attorney at arriving at a verdict." We are of opinion that such remark as the one quoted should not be indulged, but as explained by the court, under instructions given the jury in regard to the matter, we are of opinion that it is not of sufficient importance to require a reversal of the judgment.

It is contended that the court erred in not giving certain requested instructions. These are not contained in the record, only being mentioned in motion for a new trial. The court charged the jury in regard to assault with intent to murder and aggravated assault, and we are of opinion that the charges sufficiently presented the issues raised by the testimony. There was evidence which called for instructions on both theories, and we think they were sufficiently presented.

It is contended further, however, that the court did not sufficiently charge the theory of accidental shooting. This portion of the charge reads as follows: "If you believe from the evidence or have a reasonable doubt that defendant at the time of the alleged assault, drew his pistol not for the purpose of making an assault upon Martha Real, but for the purpose of protecting himself from any real or apparent danger taken from his standpoint at the time and whilst endeavoring to make Martha Real and her companions talk to him, relative to getting his wife back to him, and whilst so engaged, if you further believe or have a reasonable doubt that Martha Real took hold of the barrel of the pistol held by defendant and in the scuffle that then ensued, if any, the pistol was accidentally discharged and Martha Real thereby wounded, in such event you will find the defendant not guilty." We are of opinion that this, under the circumstances, is a sufficient presentation of the theory of accidental shooting.

Nor do we think that the further contention that the evidence fails to show "a scuffle" is well taken. While accurately speaking perhaps there was not a scuffle, the State's evidence shows that appellant pulled his pistol and presented it at the breast of Martha Real; that she grabbed and pushed it away, and by this means it was discharged. Appellant's statement is in substance that he had the pistol out and that she grabbed it, and it was accidentally discharged. If the scuffle was rather of a slight nature, still the use of the word "scuffle" in this connection is not of sufficient importance, if erroneously used, to require a reversal of the judgment. The jury could not have been misled by the use of this word under the facts, and we would not feel justified in reversing the case for this matter.

Finding no error of sufficient importance to require a reversal of the judgment, it is ordered that it be affirmed.

*Affirmed.*

[Rehearing denied November 3, 1909.—Reporter.]