Larry Kenneth DOCKERY, Appellant,

v.

The STATE of Texas, Appellee.

No. 49932.

Court of Criminal Appeals of Texas.

Sept. 23, 1975.

Motion for Rehearing Oct. 20, 1976.

Donald F. Maierson (On appeal only), Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Tim Alexander, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

Appellant was convicted for the offense of negligent homicide in the first degree under the former Code. His punishment was assessed by the jury at confinement in jail for 180 days.

Appellant was tried in 1974. He contends that he should not have been tried because negligent homicide is not named as an offense under the present penal code.

The information alleges in substance that appellant on or about November 30, 1973, while in the performance of a lawful act, was handling a pistol without an apparent intention to kill Burnette Clyde George (the deceased); that there was an apparent danger causing the death of the deceased; that he discharged his pistol thereby killing the deceased; that the death was caused by the defendant's acts of negligence and careless-

ness and failing to exercise that degree of care and caution as a person of ordinary prudence would have done under like circumstances; and that (1) he failed to use the care of an ordinary prudent person in the operation of a deadly weapon, (2) failed to aim the pistol away from the person of deceased, and (3) failed to exercise proper control over a loaded pistol. This was alleged under Article 1231 of the 1925 Penal Code.

The record reflects that appellant was sleeping on a mattress on the floor of an apartment. George entered, appellant pointed a pistol at George and was apparently attempting to uncock it when it discharged and hit George who evidently died at the hospital.

Appellant relies upon Section 6(b), V.T.C.A. Penal Code, which provides:

"Conduct constituting an offense under existing law that is repealed by this Act and that does not constitute an offense under this Act may not be prosecuted after the effective date of this Act. If, on the effective date of this Act, a criminal action is pending for conduct that was an offense under the laws repealed by this Act and that does not constitute an offense under this Act, the action is dismissed on the effective date of this Act. . . ."

Section 6(c), V.T.C.A. Penal Code, Chapter 399, Saving Provisions, provides:

"In a criminal action pending on or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court before the sentencing hearing begins."

The specific statute under which appellant was prosecuted was repealed.

Appellant made no election to be sentenced under the present Penal Code.

The question is: Could the *conduct* of the appellant mentioned in Section 6(b), supra, be classified as an offense under the 1974 Penal Code?

Section 22.05, V.T.C.A. Penal Code, provides:

"(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

"(b) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

"(c) An offense under this section is a Class B misdemeanor."

Appellant, in oral argument, contended that an indictment or information must allege the elements of the present Penal Code. If the elements of a crime under the present Code are different from the elements under the former Code, serious questions upon ex post facto or retroactive application of the present Code could be raised. This would be especially true in a case where an accused does not elect to be punished under the present Code.

■ We hold that it is not necessary for a pleading to allege all of the elements of the offense under the present Code.

■ Appellant did not elect to have his punishment assessed under the present Code. His conduct at the time it was committed was an offense. His conduct then, if committed after January 1, 1974, would be an offense under the present Code. If the accused elects to have the punishment assessed by the jury the trial court should instruct the jury using the range of punishment under the new Code, applying such law to the facts proved during both stages of the trial. See *Ambers v. State*, 527 S.W.2d 855 (Tex.Cr.App.1975).

Although not exactly in point, *Jones v. State*, 502 S.W.2d 771 (Tex.Cr.App.1973), is similar. In that case the offense was for possession of marihuana charged as a felony under Article 725b, Section 2(a), V.A.C.C.P., prior to the adoption of the Texas Controlled Substances Act, Vernon's Annotated Civil Statutes, Article 4476–15. Jones, who possessed only two ounces of marihuana, elected to be punished under the newer Act

which provided that the possession of less than four ounces of marihuana was a misdemeanor. Section 6.01(c) of the Texas Controlled Substances Act provides:

"In a criminal action pending, on appeal, or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court requesting that the court sentence him under the provisions of this Act."

The rest of the savings clause under that Act is like the savings clause of the new Penal Code.

Jones contended that the district court in which the indictment was returned lost jurisdiction because the offense was a misdemeanor. This Court held that the district court retained jurisdiction under the indictment which alleged the felony offense. The Court also held that Jones could not be convicted as a felon because the amount of marihuana involved was less than four ounces.

In that case the proof and not the indictment controlled the punishment to be assessed.

Likewise, in the present case the indictment alleges an offense under the former Code and the proof shows an offense under that Code and conduct that is an offense under the new Code.

To hold as appellant contends would allow those who have committed crimes such as the one in this case to escape punishment because an offense under the present Code contains a different name or different element even though slight.

We conclude that the evidence is sufficient to support the conviction.

No error is shown.

The judgment is affirmed.

ROBERTS and ODOM, JJ., concur in the result.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ROBERTS, Judge.

This is an appeal from a conviction for negligent homicide in the first degree, as denounced by Article 1231 of our former Penal Code. After finding the appellant guilty, the jury assessed punishment at confinement in jail for 180 days. See Article 1238 of the former Code.

Omitting the formal parts, the information alleged that on or about November 30, 1973, the appellant did then and there

"while in the performance of a lawful act, was handling a pistol and while doing so the Defendant, without an apparent intention to kill Burnette Clyde George, the deceased, but there being an apparent danger of causing the death of the deceased and other persons, caused the death of the deceased by causing his pistol to discharge thereby killing the deceased, and the death of the deceased was caused by the Defendant's acts of negligence and carelessness in failing to exercise that degree of care and caution as a person of ordinary prudence would have done under like circumstances in that he:

"1. failed to use the care of an ordinarily prudent person in the operation of a deadly weapon;

"2. failed to aim the pistol away from the person of the deceased;

"3. failed to exercise proper control over a loaded pistol."

The appellant was tried after January 1, 1974, the effective date of our new Penal Code.

On rehearing the appellant presents the same contentions urged in his original brief: that the trial court was without jurisdiction to try him after January 1, 1974, and that the State failed to prove the elements of the corpus delicti. We overrule these contentions; it follows that appellant's motion for rehearing must be denied and the judgment affirmed.

The record reflects that appellant was sleeping on a mattress on the floor of the bedroom in an apartment in Houston. The

deceased walked into the bedroom with at least two others at approximately 1:00 p. m. on the date alleged in the information. The appellant, who was lying on his stomach, had a .32 caliber pistol in his hand. When the deceased entered the bedroom, the appellant "raised up off the floor and the pistol accidently [sic] went off, just that fast, it happened just that fast." According to two eyewitnesses the appellant then stated that he "was trying to uncock the pistol and the pistol went off."

The deceased was taken to a hospital, where he died. There is no evidence that the appellant intentionally or knowingly pointed the pistol at the deceased.

Appellant first contends that the acts alleged in the information do not constitute an offense under the new Texas Penal Code.

Appellant relies upon subsection 6(b) of the Savings Provisions of the new Code, which provides:

"Conduct constituting an offense under existing law that is repealed by this Act and that does not constitute an offense under this Act may not be prosecuted after the effective date of this Act. If, on the effective date of this Act, a criminal action is pending for conduct that was an offense under the laws repealed by this Act and that does not constitute an offense under this Act, the action is dismissed on the effective date of this Act. However, a conviction existing on the effective date of this Act for conduct constituting an offense under laws repealed by this Act is valid and unaffected by this Act. For purposes of this section, 'conviction' means a finding of guilt in a court of competent jurisdiction, and it is of no consequence that the conviction is not final."

Acts 1973, 63rd Leg., Ch. 399, pp. 883, 996, Sec. 6(b).

The appellant argues that since Article 1231 of our former Code was repealed by the new Code and since the conduct alleged is no longer an offense, it follows that the appellant could not be prosecuted after January 1, 1974.

Article 1231 was in fact repealed by the enactment of the new Code. Acts 1973, supra, at pp. 991, 994, Sec. 3.

■ Moreover, appellant is correct in his assertion that if conduct condemned by the former Code is no longer an offense under the present Code, the trial court is required to dismiss the charging instrument as soon as the evidence shows that the conduct alleged is no longer an offense. *Ex parte Davila*, 530 S.W.2d 543, 546 (Tex.Cr.App. 1976) (on motion for rehearing).

The issue then is whether the conduct alleged and proved is an offense under the new Code. Subsection 6(b), supra; *Rockwood v. State*, 524 S.W.2d 292, 293 (Tex.Cr. App.1975).

■ Criminally negligent homicide is an offense under our present Code. V.T.C.A., Penal Code, Sec. 19.07(a) provides:

"A person commits an offense if he causes the death of an individual by criminal negligence."

V.T.C.A., Penal Code, Sec. 6.03(d) defines criminal negligence as follows:

"A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

■ We conclude that the actions of appellant were sufficient to indicate that he ought to have been aware of the substantial and unjustifiable risk that his conduct might injure and kill the deceased, at whom the pistol was quite obviously pointed at the time it was fired. Clearly, the risk was of such a nature and degree that it constituted a gross deviation from the standard of care prescribed by Sec. 6.03(d).

Under our former Code, we would yet be faced with the question of whether the appellant's acts were intentional or unintentional, since, as we said in *Stiles v. State*, 520 S.W.2d 894, 896 (Tex.Cr.App.1975):

> "The difference between accidental homicide and negligent homicide is whether the *act* resulting in death was *intentionally* or *unintentionally* done. The focus is on the accused's act, not on the result of his act. Accidental homicide is the result of an unintentional act while negligent homicide may only result from an intentional act. . . . (Emphasis in original.)

\* \* \* \* \* \*

> "Another difference is that a jury finding of accidental homicide results in an acquittal, while a jury finding of negligent homicide results in the jury or the court assessing punishment within the range provided by law."

■ After a careful consideration of Chapter Six of our new Penal Code, we have concluded that this precise distinction is no longer valid.

Section 6.03 of the new Code defines four culpable mental states. The highest of these is when "[a] person acts intentionally, or with intent." V.T.C.A., Penal Code, Sec. 6.03(a). There are three lesser culpable mental states which are sufficient to establish criminal responsibility: when a person acts knowingly, or with knowledge; when he acts recklessly, or is reckless; and when he acts with criminal negligence, or is criminally negligent. V.T.C.A., supra, Secs. 6.03(a), (b), (c).[1]

Thus, under this particular statutory scheme of our new Code, a person may act "unintentionally"—that is, without intent— and still commit a criminal offense, provided he acts with knowledge, recklessness, or negligence. This is in direct contrast to the holding of *Stiles v. State*, supra, and the cases on which it relies, which hold that a homicide which is the product of an unintentional act is no crime at all. It follows that the precise distinction drawn by *Stiles* —between intentional and unintentional acts—can no longer stand.

■ It is clear, however, that a homicide may still be accidental under our new Penal Code.

Section 6.01(a) of our new Code provides:

> "A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession, in violation of a statute that provides that the conduct is an offense." V.T.C.A., Penal Code, Sec. 6.01(a)."

By enacting this section the Legislature intended to assure that persons not be criminally punished for acts, omissions, and possessions not done voluntarily. Therefore, if a homicide is not the result of voluntary conduct, it cannot be criminally punished.

---

1. Section 6.03 in its entirety is as follows:

   "§ 6.03. Definitions of Culpable Mental States

   "(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

   "(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

   "(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

   "(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

However, it is also clear that such a homicide must be accompanied by one of the four culpable mental states. See V.T.C.A., Penal Code, Secs. 19.01–19.07, and V.T.C.A., Sec. 6.03.

We conclude, therefore, that homicide is punishable only where the State proves both voluntary conduct and a culpable mental state. It follows that where criminal negligence has been proved—as it has in this case—the homicide may still *not* be subject to criminal penalties if the conduct which caused the homicide is not voluntary, and we so hold.[2]

We also hold that the appellant's actions were sufficiently voluntary to establish the offense of criminally negligent homicide under Section 19.07 of our new Penal Code. Appellant's first contention is overruled.

Appellant's remaining contention is that the State failed to prove the corpus delicti in that there is no proof that the shot fired by appellant caused the death of the deceased, or that death in fact resulted. Two of the eyewitnesses to the shooting testified that they took the deceased to the hospital immediately after the shooting, and one of them stated that he thought that it was at the hospital that the deceased died rather than in the car. This testimony was sufficient to show both causation and the fact of death. See *Hines v. State*, 515 S.W.2d 670 (Tex.Cr.App.1974); *Taylor v. State*, 489 S.W.2d 890 (Tex.Cr.App.1973).

This case is easily distinguishable from *Jones v. State*, 151 Tex.Cr.R. 114, 205 S.W.2d 603 (1947), relied upon by appellant. In *Jones*, the deceased walked away from the scene after being shot, and the State utterly failed to show that the shots fired caused his death. See *Ware v. State*, 480 S.W.2d 707 (Tex.Cr.App.1972).

This contention is overruled.

The motion for rehearing is overruled.

2. To the extent that it perpetuates the former distinction between negligent and accidental homicide, *Fazzino v. State*, 531 S.W.2d 818, 820 (Tex.Cr.App.1976) is overruled. However,

ODOM, Judge (dissenting).

I dissent to the denial of appellant's motion for rehearing and the affirmance of this conviction. The majority opinion on motion for rehearing succinctly states appellant's second contention and its disposition as follows:

"Appellant's remaining contention is that the State failed to prove the corpus delicti in that there is no proof that the shot fired by appellant caused the death of the deceased, or that death in fact resulted. Two of the eyewitnesses to the shooting testified that they took the deceased to the hospital immediately after the shooting, and one of them stated that he thought that it was at the hospital that the deceased died rather than in the car. This testimony was sufficient to show both causation and the fact of death."

The relevant testimony describing the events upon which this prosecution was based includes the following excerpts:

Witness Kelly testified:

"Q. After you first arrived at the apartment what happened? Excuse me, after Gregory and Burnett George first arrived at the apartment what happened?

"A. We walked in, we rushed in, and Larry said that we had frightened him when we rushed in.

"Q. Where was Larry at this time?

"A. He was laying down on the mattress.

"Q. Larry said you had frightened him when you first walked in?

"A. Yes.

"Q. Where was the pistol?

"A. He had the pistol in his hand.

"Q. Alright sir, what happened after you got in the apartment?

"A. Well, the pistol went off, Larry attempted to get up, he said he was trying to uncock the pistol and the pistol went off.

we observe that the same result would have been reached in that case under the rationale enunciated today.

"...

"Q. You said he was trying to get up. Was he lying on his side, his back, or what?

"A. On his stomach. He got up on one knee, he was getting up.

"Q. Alright sir, after the gun went off what happened?

"A. When he fell, and we saw that he was shot, we picked him up and took him to the hospital.

"...

"Q. Alright, have you ever seen a dead person before?

"A. Yes sir.

"Q. Do you know whether or not he was dead in the car, or did he die after you got him to the hospital?

"A. After we got him to the hospital I think."

Witness Graham testified as follows:

"A. We first walked in and like I said we headed for the rear of the bed. Larry raised up off the floor and the pistol accidently went off, just that fast, it happened just that fast.

"Q. It was in his hand at that time?

"A. Yes sir.

"Q. Did it appear that he was intending to shoot anyone?

"A. No sir.

"Q. Who did he shoot?

"A. He shot Clyde. He didn't shoot anyone, the gun just went off."

The majority find this evidence sufficient on authority of *Hines v. State*, 515 S.W.2d 670 (Tex.Cr.App.), and *Taylor v. State*, 489 S.W.2d 890 (Tex.Cr.App.).

Regarding cause of death, *Hines v. State* quoted with approval from 29 Tex.Jur.2d, Homicide, Sec. 180, as follows:

"Opinion evidence is not the only mode of establishing the cause of the decedent's death; circumstantial evidence may fully suffice for this purpose. It is not necessary to establish by the testimony of a physician the fact that the wounds inflicted by the defendant caused the death; it is sufficient if it appears from all the evidence that the wounds were sufficient to cause death, and that death occurred within a reasonable time after the wounds were inflicted. It is permissible to show the good health of the deceased prior to a shooting, his condition thereafter and his subsequent death."

In the case at bar there is not one word describing the wound, or even whether it was to the head, chest, or foot. How can the majority on this sparse record conclude that "it appears from all the evidence that the wounds were sufficient to cause death"?

In *Taylor v. State*, supra, the other case relied on by the majority, it is written:

"Under the state's testimony, it is shown that deceased was alive before being shot and that after the shooting he was dead at the scene with seven gunshot wounds on his body. Appellant admitted shooting deceased and gave the gun she used to Sheriff Reaves. The gun, which had seven empty cartridges in it, was introduced into evidence without objection. Proof of these circumstances is sufficient to establish that the cause of death of the deceased was the gunshot wounds received from the gun fired by appellant."

In the instant case there was no such testimony of numerous gunshot wounds and death at the scene. In fact, a careful reading reveals that no witness was even asked if any wounds were inflicted or if death did in fact occur, although several questions assume death had occurred, and the only question as to time of death was answered, "After we got him to the hospital I think."

In *Williams v. State*, 464 S.W.2d 114 (Tex.Cr.App.), it was stated:

"The appellant admitted shooting the deceased. Officer Rose identified the body at the hospital. Testimony revealed that she was an 18 year old girl and no evidence of bad health or other cause of death was shown."

No witness here testified regarding the health or age of deceased or even that he was in fact dead.

The following excerpts from the record suggest the reason for this defect in the State's case:

"MR. ALEXANDER: State calls Dr. Erickson. Your Honor, she may not have arrived yet. May I check and see if she has left yet?

"THE COURT: Was she under subpoena?

"MR. ALEXANDER: Yes sir. We talked to her just a few minutes ago Your Honor and she was on her way.

\* \* \* \* \* \*

"THE COURT: Is there any other business we could take care of while we are waiting?

"MR. PATRICK: May I step across the hall Your Honor?

"THE COURT: Yes sir.

"MR. ALEXANDER: The State only has Dr. Erickson remaining as a witness in this case.

"THE COURT: Take the jury out Mr. Bailiff.

"THE COURT: Mr. Alexander it's been over an hour ago.

"MR. ALEXANDER: Yes sir, I understand it's been over an hour ago.

"THE COURT: Mr. Bailiff bring the jury in. Call your next witness.

"MR. ALEXANDER: State rests Your Honor and we will call Dr. Erickson in rebuttal.

"THE COURT: Call your first witness.

"MR. PATRICK: The Defense would rest without calling any witnesses.

"THE COURT: Alright. Here is the charge Mr. Patrick."

Although the failure of the State to present this witness' testimony may explain why

the proof is deficient, it certainly does not excuse the State from the requirement to prove its entire· case beyond a reasonable doubt. This Court is powerless to supply the missing proof by speculation on what testimony Dr. Erickson might have given or by making evidence out of presumptions in the questions asked.

The case of *Jones v. State,* 151 Tex.Cr.R. 114, 205 S.W.2d 603, that the majority opinion seeks to distinguish, is more like the instant case on the issue of causation than those above distinguished. In *Jones* it was stated:

"Undoubtedly, the State proved that the deceased was dead by one who attended the funeral, and also proved that appellant shot the deceased twice with a pistol. However, the proof further shows that the deceased walked away after being shot. It would have been further shown that the deceased died as a result of wounds on his body created by these pistol shots. This is not shown, and under the law, the corpus delicti must appear as shown by the record. . . . We find in the record no proof that the death of deceased was caused by the proven acts of appellant."

In view of the total lack of evidence on the extent or nature of whatever wound was inflicted, or of any other evidence of cause of death, assuming arguendo that a death did occur, I would sustain appellant's second ground of error, reverse the conviction, and remand the cause for a new trial.

I next dissent to the majority opinion's discourse on the defense óf accident in homicide cases and its grounds for rejecting the test set out in *Stiles v. State,* 520 S.W.2d 894 (Tex.Cr.App.).[1]

---

1. Although I dissent to the majority's reasons by which the *Stiles* test is rejected, I concur in their conclusion that the "magic formula" of the *Stiles* test is not viable under the new Penal Code.

The language of *Stiles* at issue reads:

"The difference between accidental homicide and negligent homicide is whether the *act* resulting in death was *intentionally* or *unintentionally* done. The focus is on the accused's act, not on the result of his act. Accidental homicide is the result of an unin-

tentional act while negligent homicide may only result from an intentional act."

From the enactment of this State's first Penal Code in 1856 until the enactment of our most recent Penal Code in 1973, the statutes governing accidental homicide and negligent homicide remained virtually unchanged. The statutory source of accidental homicide appeared in Art. 575, Texas Penal Code (1856) and later in Art. 1228, V.A.P.C. (1925), which defined excusable homicide as follows:

"Homicide is excusable when the death of a human being happens by accident or misfortune, though caused by the act of another who is in the prosecution of a lawful object by lawful means."

Negligent homicide was governed by Arts. 577–592, T.P.C. (1856), and later by Arts. 1230–1243, V.A.P.C. (1925). Regarding the distinction between excusable homicide and negligent homicide of the first degree, Art. 581, T.P.C. (1856) and Art. 1233, V.A.P.C. (1925), each provided:

"The want of proper care and caution distinguishes this offense [negligent homicide of the first degree] from excusable homicide. The degree of care and caution is such as a man of ordinary prudence would use under like circumstances."

At least as early as 1915, in the case of *Egbert v. State,* 76 Tex.Cr.R. 663, 176 S.W. 560, and later in *Harris v. State,* 150 Tex.Cr.R. 38, 198 S.W.2d 264, it was stated, as in *Stiles,* that negligent homicide and accidental homicide differed according to whether the act that caused death was done intentionally or unintentionally. The basis for this distinction in the case law, however, is not to be found expressly stated in the statutes. It appears instead to have been the result of applying the law (as stated in the last above quoted article) to the facts in those cases where the issue of proper care and caution was reducible to terms of the act resulting in death being identifiable as either intentional or unintentional, as, for example, the discharge of a firearm. See, e. g., *Groszoehmigen v. State,* 57 Tex.Cr.R. 241, 121 S.W. 1113; *Biggerstaff v. State,* 59 Tex.Cr.R. 575, 129 S.W. 840; *McPeak v. State,* 80 Tex. Cr.R. 50, 187 S.W. 754, at 756, and at 758 (concurring opinion). Such reducibility would be present in those fact situations where intentional commission of the act would exhibit at the least a "want of proper care and caution . . . such as a man of ordinary prudence would use under like circumstances" and where the other acts done, in conjunction with the unintentional commission of the act so disputed as to intent, would not exhibit a want of such care and caution. But in cases where the issue of proper care and caution is not thusly reducible to terms of the death-causing act being intentional or unintentional, negligent homicide and excusable homicide were nevertheless distinguishable under the terms of Art. 1233, supra.

In *Bertrong v. State,* 2 Tex.App. 160, the Court of Appeals approved the following charge on accidental homicide *even though the firearm was intentionally discharged:*

"If the jury believe from the evidence that the defendant, by accident, shot and killed the deceased, Rogers, taking him for wild game, you will find the defendant not guilty. But, before you can acquit the defendant on this ground, you must also believe from the evidence that the defendant, before and at the time of the alleged shooting, exercised the same degree of care and caution that a man of ordinary prudence would have done under the same circumstances."

In *Vick v. State,* 71 Tex.Cr.R. 50, 159 S.W. 50, the following charge on accident given by the trial court was characterized on appeal as "a full, fair, and apt charge," *even though the firearm was intentionally discharged.* The charge read:

"You are further charged that no act done by accident is an offense except where there has been a degree of carelessness or negligence which the law regards as criminal, and homicide is excusable when the death of a human being happens by accident or misfortune, though caused by the acts of another who is in the prosecution of a lawful object by lawful means; and, as heretofore instructed, you are charged that the defendant at the time of the alleged killing had the legal right, with such care and caution as a man of ordinary prudence would exercise under the same or similar circumstances, to fire off his gun for the purpose of frightening the deceased or alarming him to cause him to leave his premises, if he was hunting thereon, or was on there without the defendant's permission, and *if you believe from the evidence* that on the date of the killing, if the defendant, not knowing the deceased was in the thicket on his premises, shot in that direction for the purpose of alarming the witness Horsfield to make him leave said premises, or if you believe that the defendant knew the deceased was in said thicket, but fired off his gun *to alarm him and make him leave said* premises, using at the time such care and caution as a man of ordinary prudence would use under like circumstances, then you will acquit him."

See also the charges approved in *Morris v. State,* 35 Tex.Cr.R. 313, 33 S.W. 539, and *Manley v. State,* 69 Tex.Cr.R. 502, 154 S.W. 1008. Thus, on a proper set of facts, even the intentional discharge of a firearm resulting in death may be accidental and therefore excusable homicide. These cases, considered in light of the controlling statutes on excusable homicide and negligent homicide, demonstrate that the intentional act-unintentional act distinction of *Egbert, Harris,* and *Stiles,* all supra, is not a magic formula. Indeed, in *Harris v. State,* supra, it was implicitly recognized that no ironclad rule was being enshrined, for it was there stated:

"So then, *in a broad sense,* a distinguishing element between negligent homicide and accidental killing lies in the fact that, in the first, the act which causes death must be *intentionally done, while in the other, the act* which causes the death was unintentional." (Emphasis added.) 198 S.W.2d at 266.

From the statutes and cases discussed here, I am compelled to the conclusion that the difference between negligent homicide and acciden-

The majority, after citing V.T.C.A. Penal Code Sec. 6.03, Definitions of Culpable Mental States, reason that "intentional" is the highest culpable mental state, and that criminal offenses may be committed with lesser or "unintentional" culpable mental states, and from this conclude that "the precise distinction drawn by *Stiles*—between intentional and unintentional acts—can no longer stand."

With respect to this reasoning, while I agree that the *Stiles*' distinction is no longer viable (and never was a per se rule for all cases) for the reasons stated in footnote 1, I do not believe that "unintentional act" as used in *Stiles* may properly be equated with the less-than-intentional culpable mental states of Sec. 6.03.

In *Stiles* the intentional-unintentional distinction was used in describing the *act resulting in death.* Two of the less-than-intentional culpable mental states of Sec. 6.03, however, are defined in this language:

"(c) A person acts recklessly, or is reckless, with respect to *circumstances* surrounding his conduct or the *result* of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. . . .

"(d) A person acts with criminal negligence, or is criminally negligent, with respect to *circumstances* surrounding his conduct or the *result* of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. . . ." (Emphasis added.)

These two culpable mental states, then, are defined in such a way that they can properly be used to describe an actor's mental state with respect to the *circumstances* surrounding the conduct or the *result* of the conduct, but they may not properly be used to describe the act itself. Thus, they may not be characterized as destructive of the "unintentional" category referred to in *Stiles* when one recalls that Stiles expressly pointed out, "The focus is on the accused's act, not on the *result* of his act" (emphasis added), nor, it may be added, on the *circumstances surrounding* his act.

Also, I find the majority's discussion of the role of V.T.C.A. Penal Code Sec. 6.01 and the "voluntary act" requirement something less than clear. The majority appear to hold that the absence either of a voluntary act or of a culpable mental state renders a homicide excusable as accidental. It is my opinion, for two reasons, that accidental homicide is distinguished from culpable homicide by the absence of a culpable mental state.

First, in a comparison of possible volitional or mental situations, involuntariness would rank below mere absence of a culpable mental state. That is, every instance of involuntariness is necessarily an instance

---

tal homicide under the statutes in force prior to January 1, 1974, never has been precisely identified in all cases with the intentional-unintentional distinction. The latter distinction, instead, constituted a test applicable in certain cases only.

In contrast to the existence of statutory provisions in the prior law that expressly addressed accidental homicide and distinguished it from negligent homicide, the new Penal Code contains no such provisions. V.T.C.A. Penal Code Sec. 19.01(a) provides:

"A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence causes the death of an individual."

Sections 19.02–19.05 and 19.07 define the five criminal homicide offenses enumerated in Section 19.01(b), to-wit: murder, capital murder, voluntary manslaughter, involuntary manslaughter, and criminally negligent homicide, respectively. Excusable (including accidental) homicide under prior law is no longer expressly addressed by statute. The Practice Commentary to Sec. 19.01 observes:

"Homicide under prior law was criminal or noncriminal. Homicide was criminal unless excusable or justifiable. . . .

"This chapter defines only criminal homicide. The prior law's excusable homicide is a killing under this chapter by an actor who does not possess the requisite culpable mental state, e. g. accidental killing."

It would be my opinion that accidental or excusable homicide would be distinguishable from criminally negligent homicide under the new Penal Code by the absence of the culpable mental state required to show a criminal homicide, but in view of my other ground for dissent that would require reversal of this conviction, further elaboration upon this point will be reserved for another day.

lacking a culpable mental state, but not every instance lacking a culpable mental state is necessarily an instance of involuntariness. If so, then the existence or not of a voluntary act is superfluous in defining the distinction between accidental homicide and culpable homicide because the line between those two is crossed before the involuntariness level is reached.

The second reason for my opinion that Section 6.01 and voluntariness issues play no role in distinguishing accidental homicide from culpable homicides is based on the relevant Practice Commentaries.

The Practice Commentary to Sec. 6.01, cited by the majority, makes no reference to accident. On the other hand, the Practice Commentary to V.T.C.A. Penal Code Sec. 19.01 observes:

> "The prior law's excusable homicide is a killing under this chapter by an actor who does not possess the requisite culpable mental state, e. g., an accidental killing."

In this respect, the Practice Commentary's observation on accidental killing is not unlike the statutory distinction under prior law of Art. 1233, V.A.P.C. (1925), which provided:

> "The want of proper care and caution distinguishes this offense [negligent homicide of the first degree] from excusable homicide. The degree of care and caution is such as a man of ordinary prudence would use under like circumstances."

Both state that accidental killing is characterized by the absence of the lowest culpable mental state affixed to a criminal homicide. It is the absence of the requisite culpable mental state, not the absence of a voluntary act, that distinguishes excusable homicide from culpable homicide.

For the reasons stated, I dissent.

ONION, P. J., joins in this dissent.