**Stephen Blake SHUGART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–89–180 CR.**

Court of Appeals of Texas,
Beaumont.

Aug. 29, 1990.

Discretionary Review Refused
Dec. 5, 1990.

Jim Sharon Bearden, Orange, for appellant.

Walter Patterson, Asst. County Atty., Orange, for State.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the misdemeanor offense of Assault–Class A. The case was tried to a jury who found the appellant guilty and assessed his punishment at a $1500.00 fine and one (1) year in jail, with only the jail time probated for one (1) year. Appellant raises four points of error on appeal. Before considering these points of error, we feel a somewhat extended narrative of the facts elicited at trial is necessary. We note at the outset that the witnesses for each side related different versions of the events of the evening in question.

The record reflects that appellant is paralyzed and has no feeling in his body from the chest down; and that appellant's vehicle is equipped with hand controls which allow appellant to operate the vehicle entirely with his hands. The hand controls are so installed as to allow non-handicapped persons to operate the vehicle in the tradi-

tional leg and foot method without having to disengage the hand controls.

The victim, Melissa Guillory Cormier, was the State's first witness. She testified that on the evening of February 10, 1987 she and her sister, Kathy Richardson, went to a night club located in Port Arthur. The purpose for going to the night club was to celebrate Ms. Richardson's birthday, and Ms. Cormier's impending marriage. Ms. Cormier testified that appellant later arrived at the club with two other males. At some point during the evening, one of appellant's friends asked the victim to dance. The victim declined. The scene then shifts to the parking lot of the night club. As the victim and her sister were walking to Ms. Richardson's car with the intent to leave the premises, appellant and his two friends drove up and appellant stopped his car behind Ms. Richardson's car in such a way as to prevent her from exiting. The victim testified that appellant had been peeling out in the parking lot immediately before stopping behind her sister's car. The victim further testified that appellant's car windows were rolled down and appellant and his friends were yelling vulgar statements at she and her sister. At one point, appellant asked if he could "see them tiddies." This went on for approximately ten minutes, at which time appellant moved his car at the request of the victim. Before leaving, the victim asked a man she had met in the club, Randy Thornton, to follow her and her sister home because the behavior of appellant and his friends caused her concern. Mr. Thornton agreed to follow the women home.

The victim and her sister both lived in Orange County, the route they took to get home required them to cross the tall and narrow Rainbow Bridge. They were traveling on Highway 87. The victim testified that appellant followed her and her sister towards Orange, and the appellant engaged in some "bothersome" driving which included constantly pulling in front of the victim's vehicle; then getting beside the victim's vehicle very close; then getting behind the victim's vehicle very close. The victim testified that as they approached the bridge, appellant passed the victim's car and started up the bridge ahead of the victim with Randy Thornton following the victim and her sister in his vehicle. As they reached the top of the bridge, appellant stopped his vehicle. This caused the victim and her sister to have to stop also. The victim testified that at this point she was very scared. Ms. Richardson blew her horn and the victim yelled at appellant to move, and appellant finally proceeded down the bridge. The victim testified that after exiting the bridge, she and her sister attempted to lose appellant but were unsuccessful. They then decided not to go home as this would show appellant where the women lived. They decided to find a well-lighted area to stop.

They stopped at an all night convenience store. According to the victim, once her sister parked her car next to the store, appellant pulled in and again blocked her car. Mr. Thornton also arrived on the scene. The victim and her sister entered the store and the victim went to the restroom while her sister informed the clerk of the situation. The victim also talked to the clerk, Gary Perry, and informed the clerk that appellant and his friends had been bothering her and her sister. Mr. Perry later testified and corroborated the victim's testimony as to appellant's vehicle blocking Ms. Richardson's vehicle in the store parking lot. Mr. Perry also testified that the women appeared concerned; that he conversed with the women; and that he recommended that the police be called. The women declined at that point and exited the store.

The victim then testified that before she reentered her sister's vehicle, she observed appellant's vehicle move forward and make contract with the rear end of her sister's vehicle. This caused the victim to become quite angry and she walked over to the driver's side window of appellant's vehicle and began cursing appellant. When she finished, the victim turned and was walking toward her sister's vehicle when appellant's vehicle "squealed" its tires, moved forward and struck the victim knocking her up onto the hood of appellant's vehicle. The victim then slid off of the vehicle and

landed upon her "tailbone" as she struck the ground.

Without stopping to render assistance or inquire as to the victim's injuries, appellant drove out of the parking lot with his headlights off. The police were called and the license plate number was reported to them. Appellant was later stopped by the police. Appellant testified and admitted that he told the patrol officer that he may have hit someone but he wasn't sure, and that he (appellant) said this because he was scared. Ms. Richardson testified and corroborated the victim's version of the events.

Appellant and his two friends testified for the defense. The essence of the defense testimony was that up to the point when appellant's vehicle struck the victim, everyone had been getting along in a friendly atmosphere. According to appellant and his witnesses, the women started flirting with them outside the club. Both of appellant's friends denied asking either woman to dance in the club, and all three men denied even seeing the two women inside the club.

Appellant's entire defense turned on his claim that, being paralyzed from the chest down, he has no feeling in his legs. Consequently, unless he notices visually how his legs are positioned, he has no idea of their location with regard to the brake or accelerator pedals on the floorboard of his vehicle. Furthermore, appellant claimed that he did not strike the rear end of Ms. Richardson's vehicle; that he was not parked behind her vehicle nor was he blocking her from moving it; that his vehicle was running and the automatic gear shift was positioned in "neutral"; that he had intended to go in reverse but had inadvertently shifted into "drive"; that his legs must have gone into spasms without his knowledge and one leg had worked itself onto the accelerator pedal, and as appellant shifted into "drive", the vehicle lunged forward striking the victim. Appellant and his witnesses all stated that the victim did not fall to the ground after rolling over the hood, but landed on her feet. Appellant claimed that is when the victim came up to his window and cursed him. He tried to apologize, but the victim would not be placated, so he left. Appellant and his friends testified that appellant did not turn off his headlights as he exited the store's parking lot. In short, appellant claims that his vehicle struck the victim completely by accident; he had absolutely no intention of hitting the victim with his car. With this evidentiary background in mind, we now take up appellant's contentions of error.

■ Appellant's first point of error states, "The State of Texas failed to prove that Defendant, Stephen Shugart did then and there intentionally and knowingly cause bodily injury to Melissa Guillory by driving a motor vehicle into the person of the said Melissa Guillory." This point of error centers around the claim that appellant's conduct was not voluntary, as he was entirely unaware that his foot was making contact with the accelerator when he placed the vehicle in drive. Furthermore, appellant claimed he had intended to place the vehicle in reverse, and had mistakenly shifted into "drive". In order to decide this point of error, we must consider the law involving "sufficiency of the evidence", as well as any legal distinctions among "intentional", "knowing", and "voluntary" conduct. Any review of sufficiency of the evidence is governed by a line of cases beginning with *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* requires us to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We continually take to heart the following language from *Jackson:*

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [footnote omitted]. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established built be-

yond a reasonable doubt...." [citations omitted]. (emphasis theirs).

*Jackson, supra,* 443 U.S. at 318–319, 99 S.Ct. at 2788–2789. *See, Moreno v. State,* 755 S.W.2d 866 (Tex.Crim.App.1988). With regard to the question of the legal nature of "intentional", "knowing", and "voluntary" conduct in criminal cases, we rely on *Dockery v. State,* 542 S.W.2d 644 (Tex. Crim.App.1976) (Opinion on Motion for Rehearing) as discussed and applied in *Simpkins v. State,* 590 S.W.2d 129 (Tex.Crim. App.1979). *Simpkins, supra* states, in pertinent part:

> The distinction between intentional and unintentional acts which arose under our former penal code has been abolished. See *Dockery v. State,* 542 S.W.2d 644 (Tex.Crim.App.1975) (on Motion for Rehearing). In *Dockery,* supra, we stated that Sec. 6.03 of the new code defines four culpable mental states. Thus, a person may act "unintentionally" and still commit a criminal offense, provided he acts with knowledge, recklessness, or negligence.
>
> V.T.C.A. Penal Code, Sec. 6.01(a) provides:
>
> "A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession, in violation of a statute that provides that the conduct is an offense."
>
> Therefore, the distinction to be drawn in determining if the [act or omission] is criminal is not whether the act is intentional or unintentional, but whether the act is voluntary or involuntary.

In the instant case, the charging instrument alleged the appellant "intentionally and knowingly" caused bodily injury to the victim. Thus the conviction can be sustained on this point if evidence exists in the record that the appellant's actions were voluntary. Where the only element not supported by direct proof is the intent of an accused, it may be inferred from circumstances in evidence. *Belcher v. State,* 504 S.W.2d 858 (Tex.Crim.App.1974); *Grinage v. State,* 634 S.W.2d 863, 867 (Tex.App.— San Antonio 1982, pet. ref'd). The questions we must address appear to be wheth-

er any rational trier of fact could have inferred "knowledge" on the part of appellant, and whether any rational trier of fact could have found voluntary conduct on the part of appellant when his vehicle struck the victim. *Jackson supra* requires that we view the record testimony in the light most favorable to the verdict.

■ Considering the record in light of the previously cited authority, we find ample evidence for a rational trier of fact to rely on in finding "knowing" and "voluntary" conduct on the part of appellant. As noted above, the case against appellant consisted almost entirely of eyewitness testimony. The jury, being the judges of the facts and credibility of the witnesses, could choose to believe or not believe the witnesses, or any portion of their testimony. *Sharp v. State,* 707 S.W.2d 611 (Tex.Crim. App.1986). Based upon the testimony of the victim and the rest of the State's witnesses, all of the elements of assault were proven. The appellant chose to raise the issue of the "involuntariness" of his conduct. This issue was raised exclusively by the verbal testimony of appellant and his two companions. The traditional line of case law of which *Sharp* is representative, permits the jury to disregard entirely all of the testimony of appellant and his two witnesses, while accepting entirely all of the testimony of the State's witnesses. Without passing judgment on the credibility of the witnesses for either side, we note the testimony of the appellant himself under cross-examination as follows:

Q. Now, you have stated that you have these spasms in your legs all the time. Is that pretty common?

A. I guess. I can activate them at any time. Yeah, they are there all the time. They are really—

Q. How long had you been driving this particular car at that time?

A. Oh, couple of years, maybe.

Q. You were pretty skilled in controlling that car?

A. Yeah, I can drive it good.

Q. Now, do you have those type spasms fairly common?

A. You bet you.

From this bit of testimony alone, a rational trier of fact may have great difficulty in believing appellant's claim that because of a leg spasm of which appellant was entirely unaware, his foot was on the accelerator when he shifted to "drive", thus causing his vehicle to strike the victim. Furthermore, the jury did not have to believe appellant when he told them that he had no feeling or movement aside from spasms in his body from his breast down. Testimony from both sides indicated that appellant was quite skilled in operating his vehicle, with the State's witnesses' description of appellant's proficiency portraying a decidedly sadistic method of operation. Again, the jury was entirely free to choose this version in which appellant was in complete control of his vehicle and knew what he was doing every step of the way. This being the case, appellant's point of error one is overruled.

Appellant's second point of error states, "The Trial Court committed reversible error by allowing evidence of an extraneous offense." The evidence appellant complains of was admitted during cross-examination of appellant, and is as follows:

Q. How long had you been driving this particular car at that time?

A. Oh, couple of years, maybe.

Q. You were pretty skilled in controlling that car?

A. Yeah, I can drive it good.

Q. Now, do you have those type spasms fairly common?

A. You bet you.

Q. How many wrecks have you had because of that?

Mr. Bearden: Your Honor, I—excuse me. I am going to object. That is an extraneous offense, has no bearing on this issue.

The Court: It is not an offense, Mr. Bearden, so you are overruled on that ground.

Mr. Bearden: Your Honor, then I am going to object to it being irrelevant and immaterial.

The Court: Overruled.

Mr. Patterson:

Q. How many wrecks have you had in that two-year period you have had that car?

A. I hit a—at Rhinestone's parking lot one time for the same, exact thing, ran into the driver's side of a car and luckily nobody was hurt.

By definition, extraneous offenses are "extra, beyond, or foreign to the offense for which the party is on trial." *Ridinger v. State*, 146 Tex.Crim. 286, 174 S.W.2d 319 (1943). In other words, an extraneous offense is any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging instrument. *McDonald v. State*, 692 S.W.2d 169 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd); *Gomez v. State*, 626 S.W.2d 113 (Tex.App.—Corpus Christi 1981, pet. ref'd). We find that the question did not inquire as to any act of misconduct upon appellant's part. Each of the defense witnesses, including appellant himself, had already testified as to what a good driver appellant was. Furthermore, the State made no assertions of fault nor any inquiries as to whether citations had been issued as a result of any collisions involving appellant. In fact, we feel that the question and appellant's subsequent response served to aid in appellant's defense as it bolstered appellant's theory of the involuntary muscle spasms being the sole cause of his vehicle's movement in striking the victim. Point of error two is overruled.

Appellant's third point of error states, "The trial court committed reversible error in not giving Appellant requested charge whether Appellant's causative act was voluntary or not ("accident")." We completely agree with appellant's citation of *Garcia v. State*, 605 S.W.2d 565 (Tex.Crim.App.1980) for the proposition that a defendant is entitled to an affirmative charge that presents his theory, if raised, and that it is reversible error if not given. Appellant requested the following language be used by the trial court in its charge to the jury:

Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question, defendant, Stephen Shugart, did commit assault by

driving his vehicle into Melissa Cormier or Melissa Guillory, with his automobile as alleged in the Information, but further believe from the evidence or have a reasonable doubt thereof that the assault was from an accidental engagement of the automobile and was not the voluntary act or conduct of Stephen Shugart, you will acquit the defendant and say by your verdict "Not Guilty".

This language is legally flawed, and the trial court was correct in not incorporating it into its charge to the jury. As the Court of Criminal Appeals stated in *Williams v. State*, 630 S.W.2d 640 (Tex.Crim.App.1982):

> There is no law and defense of accident in the present penal code, and the bench and bar would be well advised to avoid the term "accident" in connection with offenses defined by the present penal code. The function of the former defense of accident is performed now by the requirement of V.T.C.A., Penal Code, Section 6.01(a), that, "A person commits an offense only if he voluntarily engages in conduct...." *Dockery v. State*, 542 S.W.2d 644, 649–650 (Tex.Crim.App. 1976). If the issue is raised by the evidence, a jury may be charged that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the conduct of which he is accused.

*Williams, supra* at 644. In the instant case, the trial court charged, in pertinent part, "... but if you do not so believe, or if you have a reasonable doubt thereof, or if you have a reasonable doubt as to whether the defendant, STEPHEN BLAKE SHUGART, voluntarily drove his vehicle into Melissa Guillory, you will acquit the defendant and say by your verdict 'Not Guilty.'" This is virtually identical to the suggested language quoted above from *Williams*. Point of error three is overruled.

■ Appellant's final point of error is as follows, "The trial court committed reversible error by failing in his instruction in the Charge of the Court to fairly and adequately give a complete charge on the law, Voluntary (accident)." Appellant claims that the trial court's charge on "voluntary" conduct was not full and complete and, as such, denied appellant an "adequate and fair" trial. Paragraph I of the trial court's charge states, "A person commits an offense only if he voluntarily engages in conduct, including an act or an omission." Appellant complains that because the above sentence was separate and apart from the paragraph that applied the definition of voluntary conduct to the facts, that the trial court committed fundamental error. We find no merit to this argument. Appellant made no such objection at trial. Furthermore, we have already sustained the trial court's charge as to form and content based on *Williams, supra*. Point of error four is overruled. For the above stated reasons, the judgment of the trial court is affirmed.

AFFIRMED.