Alfred E. BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00714–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 10, 1995.

Discretionary Review Granted
Nov. 15, 1995.

Ralph L. Gonzalez, Richard A. Dawson, Richmond, for appellant.

John F. Healey, Jr., Fort Bend, J. Sidney Crowley, Richmond, for appellee.

Before MURPHY, C.J., and ANDERSON and HUDSON, JJ.

## MAJORITY OPINION

ANDERSON, Justice.

Alfred Brown entered a plea of not guilty to the offense of murder. TEX.PENAL CODE ANN. § 19.02 (Vernon 1994).[1] The jury found Brown guilty and the court assessed punishment at imprisonment for 12 years. Brown brings one point of error challenging the trial court's refusal to submit an instruction on the voluntariness of his act. We sustain the point of error, reverse the judgment of the trial court and remand the case for further proceedings.

The evidence, viewed in the light most favorable to the verdict, shows that on July 17, 1992, Ryan Coleman and Alfred Brown were drinking beer and talking in the parking lot at an apartment complex when James McClean, Haywood Pittman, and their friends came walking through. A dispute developed. Priscilla Caraballo, the wife of

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

the deceased, Joseph Caraballo, testified that she and her husband were inside their apartment when someone knocked on their door. Joseph Caraballo went outside and joined the group which was engaged in loud talking.

Brown became involved in a fight with McClean and hit McClean with a beer bottle. McClean stated, "Hold on there, I'll be right back." McClean and Pittman were known to possess and discharge firearms within the confines of the complex. Coleman went upstairs and obtained a gun from his brother's apartment and stuck the gun in the waistband of his pants. Brown testified he thought he saw Pittman holding a gun and decided he needed one himself. He stated that when Coleman came downstairs, he grabbed the gun from Coleman's waistband. Brown was in the act of bringing the gun up when he was bumped, pushed, or hit from behind by Coleman, who yelled, "No!" The gun discharged, killing Caraballo.

There was evidence introduced that the gun had a hair trigger, Brown did not know the gun was loaded, and that Brown held the gun in his left hand because his right hand was incapacitated from earlier injuries. Brown testified he did not intend to shoot anyone, but that he only intended to show the gun to Pittman so that he would retreat back into his apartment.

Lillie Mae Green testified she was outside of her apartment when she heard a door slam and saw Brown come down the stairs cursing, seemingly upset with someone. She took her son into her apartment and then heard a shot. She went back outside and saw Brown, who stated, "Oh man, I shot the wrong guy."

Appellant and Ryan Coleman both testified that the fatal shot was fired only as a result of a bump by Ryan Coleman against appellant's body while appellant was "coming up with the gun." Appellant stated from the witness stand:

> I told them ... I was coming up with the gun. I had the gun coming up like that, and Ryan hit me before I even got the gun. ...

There is also testimony by Ryan Coleman that he bumped appellant just before the gun discharged.

Q. He [Appellant] was behind you?

A. Just a little bit.

Q. And you pushed him, did he go off balance when you pushed him?

A. Right.

Q. And that's when the gun went off?

A. Right.

There was also testimony by Ryan Coleman concerning nuances of the weapon and the probable cause of the discharge.

Q. And you said it's really easy to pull the trigger, automatic?

A. Right.

Q. You pull it and it fires rapidly?

A. Right.

Q. Yet when Alfred pulled the trigger it only fired one time even though he had been hit and knocked off balance, huh?

A. Well, he didn't pull the trigger.

Q. He didn't pull the trigger?

A. I don't think he pulled the trigger. That's what I'm saying, if he pulled the trigger, if he actually pulled the trigger the gun would have fired, that's why I say it probably went off when I bumped him. If he would have pulled the trigger it would have fired rapidly.

In his sole point of error, Brown contends the trial court should have submitted an instruction to the jury regarding the voluntariness of his act. He contends a trial court reversibly errs if it refuses to submit a defensive issue if there is any evidence to support the submission of that issue to the jury. He also contends there was evidence from which a jury could find that appellant, in the act of raising the weapon, caused the weapon to discharge because he was bumped by Coleman. We agree.

■ A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. The defendant's testimony alone may

be sufficient to raise a defensive theory requiring a charge. *Warren v. State,* 565 S.W.2d 931, 933–34 (Tex.Crim.App.1978); *Pimentel v. State,* 710 S.W.2d 764, 773 (Tex. App.—San Antonio 1986, writ ref'd).

During the trial, appellant requested the following charge:

> I would like an instruction on an involuntary act, that specifically being, you are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession, conduct [sic] is not rendered involuntary merely because a person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Alfred Brown, did cause the death of Joseph Caraballo by shooting him with a gun as alleged in the indictment, but you further believe from the evidence or have a reasonable doubt thereof that the shooting was the result of an accidental discharge of the gun and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict not guilty.

■ Where the evidence warrants it, a defendant is entitled to a requested charge on the issue of the voluntariness of his acts. *Garcia v. State,* 605 S.W.2d 565, 566 (Tex. Crim.App.1980). However, the fact that a weapon "just went off" does not render an act involuntary so as to require a charge. *Gaona v. State,* 733 S.W.2d 611, 617 (Tex. App.—Corpus Christi 1987 pet. ref'd). Where the accused is acting alone when the gun is "accidentally" fired, causing injury, there is no basis for a jury charge on the issue of voluntariness of the accused's act.[2] However, in the case at bar, the testimony of appellant and Coleman provides a solid basis for an instruction on the voluntariness of appellant's conduct. We reach our conclusion based on a Court of Criminal Appeals decision wherein it articulated the standard to be applied in determining whether the jury gets an instruction on voluntary conduct.

> Where the issue is whether an accused recklessly caused bodily injury by shooting with a gun and the evidence shows that the accused voluntarily engaged in conduct that includes, *inter alia,* one or more voluntary acts leading to the actual shooting, we hold as a *matter of law* the fact that when such conduct also includes a bodily movement of the accused sufficient for the gun to discharge a bullet, without more— such as precipitation by another individual, as in *Garcia* and *Simpkins,* both supra—a jury need not be charged on the matter of whether the accused voluntarily engaged in the conduct with which he is charged. *George v. State,* 681 S.W.2d 43 (Tex.Crim. App.1984).

■ The Court's reference to *Garcia,* and *Simpkins*[3] is the critical distinction which forms the template for our decision today. This is because in *George* it was held that where a defendant's handling of a gun is voluntary, the fact that his thumb may have slipped off of the hammer "involuntarily" does not render the actions involuntary. The concept is, just because part of the conduct may be "involuntary" does not relieve a defendant of responsibility and culpability for the entire action. *Thomas v. State,* 699 S.W.2d 845, 850 (Tex.Crim.App.1985). But a different result was obtained in *Garcia.* In that case, the defendant was charged with murder. As the defendant and the deceased were walking along together, the deceased gave him a gun with the hammer cocked. When the defendant stated he was going to throw the gun into the canal, the deceased grabbed the defendant's right elbow with one hand and the gun with another in an effort to take the gun away. The gun discharged,

---

**2.** There are numerous cases in which it has been held that where the evidence does not raise the issue of involuntary conduct, the trial court is not required to include such an instruction in its charge to the jury: *George v. State,* 681 S.W.2d 43 (Tex.Crim.App.1984); *Gaona v. State,* 733 S.W.2d 611 (Tex.App.—Corpus Christi 1987, pet. ref'd); *Ross v. State,* 763 S.W.2d 897 (Tex.App.— Dallas 1988, pet. ref'd); *Pimentel v. State,* 710 S.W.2d 764 (Tex.App.—San Antonio 1986, pet. ref'd); *Williams v. State,* 630 S.W.2d 640 (Tex. Crim.App.1982).

**3.** *Simpkins v. State,* 590 S.W.2d 129 (Tex.Crim. App.1979).

killing the victim. Such testimony was held sufficient to raise an issue of fact as to the voluntariness of the conduct of the accused. *See George,* 681 S.W.2d at 46 n. 8. Similarly, in *Simpkins,* the defendant was charged with murder. Defendant had approached a group of people and argued with the deceased. Defendant retrieved a shotgun from his car and during a struggle with Kelvin Curvey the gun discharged. Defendant then returned with the gun towards the group of people and, under one version of the testimony, he stopped four feet from the deceased, aimed and fired. After the gun discharged, the State's witnesses testified that Alvin Giddings and Curvey ran toward defendant and struggled for the gun. However, appellant testified the shooting was an accident because the gun discharged, hitting the deceased while appellant and Giddings were struggling with the gun. Since the issue of accident, or involuntary conduct, was raised by the evidence in *Simpkins,* the defense properly requested and obtained an instruction on involuntary conduct. The jury nevertheless convicted Mr. Simpkins of murder, and the Court of Criminal Appeals affirmed the judgment. *Garcia* and *Simpkins* are instructive because they require evidence of a precipitating act of another which causes the gun held by the defendant to discharge before a defensive jury instruction on involuntary conduct can be given.

■ Thus, in order to avoid the general holding in *George,* and to be entitled under the exception to the instruction on involuntary conduct, we perceive the rule[4] to be that there must be evidence of an independent event, such as the conduct of a third party, which could have precipitated the discharge of the bullet. In *Whitehead v. State,*

696 S.W.2d 221 (Tex.App.—San Antonio 1985, pet ref'd), the shooting was precipitated by another individual and a question of involuntariness was legitimately raised for jury resolution. The Court in *Whitehead* stated, "Though his testimony was not without contradiction, the appellant stated that he did not intentionally shoot the deceased, but that the gun went off when someone grabbed him from behind." *Whitehead,* 696 S.W.2d at 222.

In view of the testimony of appellant and Ryan Coleman, we are compelled to sustain appellant's sole point of error, reverse the judgment, and remand the cause for a new trial.

HUDSON, Justice, concurring.

The cases with which the path of law is paved are fashioned by jurists who must oftentimes determine the course of jurisprudence with little or no illumination of the topography ahead. For the reasons recited in the majority opinion, we are compelled to reverse the trial court's judgment. In my opinion, however, the law regarding the propriety of a jury instruction on the necessity of "voluntary" conduct is the result of an ill-advised detour taken many years ago.

Common law has long recognized that the unintentional killing of another person does not constitute the crime of murder.[1] Whether expressed in terms of "willful," "voluntary," or "intentional" conduct, the law has consistently required an element of volition in cases of murder. Article 1288 of the 1925 Penal Code provided: "Homicide is excusable when the death of a human being happens by accident or misfortune ..." The 1925 Penal Code also contained the following definition of murder in Article 1256: "Who-

---

4. Our perception of a rule relating to the availability of an instruction on involuntary conduct in these weapon discharge cases arises, in part, from footnote eight in *George* where the Court discusses the El Paso Court of Appeals' decision in *Withers v. State,* 631 S.W.2d 595 (Tex.App.—El Paso 1982), affirmed on other grounds, 642 S.W.2d 486 (Tex.Crim.App.1982). The El Paso Court stated the rule to be that "if the discharge of the weapon does not result from the voluntary conduct of the defendant, i.e., conduct of a third party as in *Garcia,* then the issue of accidental homicide is raised and an instruction must be given." 631 S.W.2d at 597. The Court of Crimi-

nal Appeals in footnote eight concludes that "the perception of the [El Paso] court of appeals that such a rule is developing may be correct."

1. Early in English common law there arose a distinction between "felonious homicide" and "homicide by misadventure." 2 FREDERICK POLLOCK AND FREDERIC MAITLAND, THE HISTORY OF ENGLISH LAW 484 (Cambridge, 2nd ed. 1899). "Murder is when one is slaine with a man's will, and with malice prepensed or forethought." 2 EDWARD COKE, INSTITUTES OF THE LAWS OF ENGLAND 287 b. (London: Hansard & Sons, 18th ed. 1823).

ever shall *voluntarily* kill any person within this State shall be guilty of murder." (Emphasis added). By its use of the word "voluntarily," I believe the legislature intended to impose upon the State the burden of proving the defendant took the victim's life "intentionally." [2]

While the 1974 Penal Code omitted the word "voluntarily" from the definition of the offense of murder, it retained the notion that a person cannot "accidentally" commit murder. Under the current Penal Code's definition of murder, the State is required to show an accused caused the victim's death "intentionally or knowingly," or with the specific intent to cause serious bodily injury, or by committing an act clearly dangerous to human life with the specific intent to commit a felony. TEX.PENAL CODE ANN. § 19.02(b) (Vernon 1994). The culpable mental state of "intentionally" or "knowingly" has been included as an element of every statutory variant of murder. Any murder committed intentionally or knowingly must, by definition, also be committed voluntarily.

Judge Clinton cogently observed that "if the burden of proving voluntary conduct rests on the State ... then absence of voluntary conduct is not a defense." *George v. State*, 681 S.W.2d 43, 46 n. 6 (Tex.Crim.App. 1984). He also concluded that if the absence of voluntary conduct is not a defense, the accused has no right to insist upon a jury instruction thereon. *Id.* I agree.

Common sense and plain meaning dictate that the issue of "voluntariness" is a part of, and subsumed by, the statutory requirement that the offense of murder be committed "intentionally" or "knowingly." [3] By presenting evidence that his conduct was not "voluntary," the appellant did nothing more than deny an element of the offense. It is well established that "denial of a defendant's requested instruction is not error where the requested instruction is an affirmative submission of a defensive issue which merely

denies the existence of an essential element of the State's case." *Cannon v. State*, 691 S.W.2d 664, 676 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). In addition, if the absence of voluntary conduct is not a true "defense," an instruction thereon would seem to be an improper comment on the weight of the evidence. *Cf. Roberson v. State*, 852 S.W.2d 508, 511 (Tex.Crim.App.1993) (because "misidentification" is not an affirmative defense, an instruction thereon constitutes an improper comment on the weight of the evidence).

However, the court of criminal appeals held in *Williams v. State*, 630 S.W.2d 640 (Tex.Crim.App.1982) that the function of the former *defense* of accident is now performed by the requirement of "voluntary" action contained in Section 6.01(a) of the Penal Code. *Williams*, 630 S.W.2d at 644. From this holding, there has evolved the concept that the absence of "voluntary" conduct constitutes a *defense* to prosecution which is in some fashion distinct from the State's burden of proving intentional or knowing conduct. Deviating from the road of erudition, the court of criminal appeals recently declared that the term "voluntary," as it is used in Section 6.01(a) does not possess the same meaning it enjoys in common usage. *Alford v. State*, 866 S.W.2d 619, 623–24 (Tex.Crim. App.1993). The court specifically held that the term "voluntary," as used in Section 6.01, is not synonymous with "willful." *Id.* at 622. By following this errant path, the court of criminal appeals perpetuates the flawed "defense" of voluntariness.

I cannot logically defend the law in this regard, but *stare decisis* obliges me to apply it in this case. Based upon controlling precedent, I reluctantly concur.

---

2. "Murder is the voluntary or intentional killing of a person without justification or excuse.... The word 'voluntarily' carries with it the 'intention' to commit the offense charged." *Becks v. State*, 158 Tex.Crim. 204, 254 S.W.2d 396, 398 (1953).

3. *Cf. Vargas v. State*, 830 S.W.2d 656, 657–58 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd)

(because the jury was required to find the defendant committed the offense of capital murder "intentionally," the defendant suffered no egregious harm from the trial court's failure to submit an instruction requiring the jury to find his actions were "voluntary").