**Erasmo VALENZUELA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 07–96–0262–CR.**

Court of Appeals of Texas,
Amarillo.

March 27, 1997.

Law Offices of David Martinez, David Martinez, Lubbock, for appellant.

Lubbock County District Attorney, William C. Sowder, Michael West, Lubbock, for appellee.

Before QUINN and REAVIS, JJ., and REYNOLDS, Senior Justice.*

QUINN, Justice.

Erasmo Valenzuela, appellant, appeals his conviction for murder in the first degree and asserts one point of error. In the latter, he posits that the trial court erred in refusing to submit "a defensive issue" regarding the voluntariness of his conduct. We disagree and affirm the judgment.

### Background

During a scuffle with appellant, Margarita Davila was shot and killed. Prior thereto, she, Yolanda Reyna, and Juan Chapa had confronted appellant who wanted to drive a Chevy Suburban he and Reyna owned to Mexico. Reyna, Chapa, and Davila refused to let appellant leave with the vehicle. Indeed, depending upon which witness was believed, Chapa may have tried to dissuade appellant with a tire iron and knife while appellant may have attempted to rebuff Chapa with a knife. Furthermore, the knife possessed by Chapa may have been originally obtained from Davila who purportedly first threatened appellant with it.

Nevertheless, Reyna and her two compatriots subsequently gave appellant consent to remove various items of personal property from the vehicle. Under the pretense of doing so, (and depending upon the rather conflicting memory of each witness that testified), appellant reached in, withdrew a handgun, and waved the weapon around while telling Chapa to " 'come on.' " Eventually, appellant informed the three that the gun was unloaded; indeed, according to one witness, he even attempted to remove the ammunition clip to prove the point. At that point, Davila "tried to grab" the firearm. It discharged, and a bullet struck and killed her.

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. § 75.002(a)(1) (Vernon Supp. 1997).

### Sole Point of Error

Appellant contends that the shooting was an "accident," as subsequently testified to by Reyna. Furthermore, while it entertained objections to the charge, the trial court was told by appellant that it should include an instruction "on accident ... regarding the involuntariness of ... [his] actions." The instruction proffered by appellant read:

You are instructed that a person commits an offense only if he voluntarily engages in conduct including an act, an omission or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.

Now, if you believe from the evidence beyond a reasonable doubt that Margarita Davila, the deceased, was shot with a deadly weapon ... and that she died as a result thereof, but you further find from the evidence, or you have a reasonable doubt thereof, that while the defendant was attempting to show the deceased or another person that the handgun was unloaded, that the gun discharged while the deceased was attempting to grab the handgun, then you will find the defendant not guilty.

The trial court refused to submit the "defensive issue," and appellant deems the refusal to be error.[1] We overrule the point for several reasons.

First, it is clear that an accused is entitled to an affirmative instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996); *Hutcheson v. State*, 899 S.W.2d 39, 42 (Tex.App.—Amarillo 1995, pet. ref'd). Yet, equally clear is the rule that the court need not submit instructions which merely negate an element of the offense. *Penry v. State*, 903 S.W.2d 715, 748 n. 30 (Tex.Crim.App. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct.

1. The court, however, did instruct the jury on murder, manslaughter, and criminally negligent homicide.

480, 133 L.Ed.2d 408 (1996); *Sanders v. State,* 707 S.W.2d 78, 81 (Tex.Crim.App. 1986); *Cannon v. State,* 691 S.W.2d 664, 676 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Green v. State,* 566 S.W.2d 578, 584 (Tex. Crim.App.1978); *Lynn v. State,* 860 S.W.2d 599, 601 (Tex.App.—Corpus Christi 1993, pet. ref'd); *Colson v. State,* 848 S.W.2d 328, 332 (Tex.App.—Amarillo 1993, pet. ref'd).

■■■■ So too is it clear that while "accident" may have been a defense to criminal prosecution at one time, it is no longer. *Adanandus v. State,* 866 S.W.2d 210, 229 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). Instead, the concept was subsumed by § 6.01(a) of the Texas Penal Code which prohibits conviction for anything other than "voluntary conduct." *Id.* That is, one cannot be convicted if his conduct forming the basis of the crime was involuntary. Moreover, the burden lies with the State to prove that the accused acted voluntarily. *Lynn v. State,* 860 S.W.2d at 602. What this means is that the question of whether the defendant acted voluntarily, as opposed to involuntarily or accidentally, is not truly a defense but rather an element of the State's case in chief. *Id.; Ross v. State,* 763 S.W.2d 897, 900 n. 1 (Tex.App.-Dallas 1988, pet. ref'd); *see George v. State,* 681 S.W.2d 43, 46 n. 6 (Tex.Crim. App.1984) (wherein Justice Clinton notes this to be a correct conclusion). And, when the accused raises that particular issue (like appellant here), he is doing nothing more than trying to negate an element of the State's case. *Id.* Thus, he is not entitled to an affirmative instruction on the matter. *Lynn v. State,* 860 S.W.2d at 602; *accord Penry v. State,* 903 S.W.2d at 748 n. 30; *Sanders v. State,* 707 S.W.2d at 81; *Cannon v. State,* 691 S.W.2d at 676; *Green v. State,* 566 S.W.2d at 584; *Colson v. State,* 848 S.W.2d at 332.

We do note that others may disagree with the foregoing conclusion. For instance, the panel in *Brown v. State,* 906 S.W.2d 565 (Tex.App.—Houston [14th Dist.] 1995, pet. granted), held otherwise, despite one member voicing rationale similar to ours. Nevertheless, *Brown* relied extensively on *George v. State* wherein Justice Clinton interpreted *Williams v. State,* 630 S.W.2d 640 (Tex.Crim. App.1982) as holding that "the instruction must be given." *George v. State,* 681 S.W.2d at 46 n. 6. Yet, upon reading *Williams,* one discovers that the court nowhere said that the instruction "must be given." Instead, it stated that the trial judge "may" charge the jury "that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the conduct of which he is accused." *Williams v. State,* 630 S.W.2d at 644. As can be seen, the actual wording used in *Williams* is hardly directory. And, to construe it as such is quite erroneous given the unmistakable precedent holding that trial judges need not affirmatively submit a "defensive" issue which simply negates an element of the State's case. *Penry v. State, supra; Sanders v. State, supra; Cannon v. State, supra; Green v. State, supra.* Indeed, had the conflict actually been raised in *Williams,* we assume that the Texas Court of Criminal Appeals would have followed its own precedent and clarified, that the instruction was not mandatory.[2]

■■■■ Second, and assuming that the instruction was available under certain circumstances, we note an absence of such circumstances here. Simply put, no evidence indicating that the firearm discharged via "precipitation by another individual" appears of record. *George v. State,* 681 S.W.2d at 47. In other words, it is not enough for the evidence to simply show that the accused did not intend to shoot and that some involuntary act occurred. *Ross v. State,* 763 S.W.2d at 901; *George v. State,* 681 S.W.2d at 47. Rather, more than speculation or a scintilla of evidence must illustrate that the gun fired because of the intervention of some third party or some extraneous or independent event. *Id.; Brown v. State,* 906 S.W.2d at 568; *Gaona v. State,* 733 S.W.2d 611, 616–17 (Tex.App.—Corpus Christi 1987, pet. ref'd); *see Adanandus v. State,* 866 S.W.2d at 229–30 (holding that the court did not err in submitting the instruction because

---

**2.** Interestingly, the conflict may be the very reason why the *Williams* court opted to use the word "may" as opposed to "must," "shall," or some other compulsory term.

of the absence of evidence "that appellant and the deceased struggled over the gun or that the deceased ever had his hand on the gun, [or] ... evidence that appellant's actions in aiming the gun and pulling the trigger were involuntary").

Here, the evidence indicated that Davila "tried" to grab the gun, but nothing illustrates that she succeeded. Nor does any evidence proffered during the guilt-innocence phase of the trial indicate that she somehow came into contact with the weapon or appellant and thereby caused the firearm to discharge. Indeed, when asked whether he saw contact between Davila, the gun, or appellant, Chapa replied "no sir." Moreover, Reyna never mentioned anything about contact in her testimony. Though admitting that Davila attempted to get the gun, Reyna nevertheless agreed that it "seemed to fire accidentally as [appellant] was unloading its [ammunition] clip." In sum, no 'evidence contradicts the finding that anyone or anything other than appellant caused appellant to pull the trigger; so, the instruction appellant requested was unwarranted.

Accordingly, we affirm the judgment.