ACCEPTED
01-14-00522-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/31/2015 6:26:03 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00522-CR

## IN THE COURT OF APPEALS

## FIRST SUPREME JUDICIAL DISTRICT

## AT HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/31/2015 6:26:03 PM
CHRISTOPHER A. PRINE
Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**JAMES ALLEN BUNDAGE**
**Appellant**

**V.**

**THE STATE OF TEXAS**
**Appellee**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Appeal from the**

**12th District Court of Grimes County, Texas**

**Trial Cause No. 17,304**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**STATE'S BRIEF**

**TUCK MOODY MCLAIN**
**District Attorney**
**P. O. Box 599**
**Anderson, Texas 77830**
**(936) 873-2137**
**State Bar No. 13737650**

NO. 01-14-00522-CR

IN THE COURT OF APPEALS

FIRST SUPREME JUDICIAL DISTRICT

AT HOUSTON, TEXAS

********************

JAMES ALLEN BUNDAGE
Appellant

V.

THE STATE OF TEXAS
Appellee

********************

Appeal from the

12th District Court of Grimes County, Texas

Trial Cause No. 17,304

********************
STATE'S BRIEF

TUCK MOODY MCLAIN
District Attorney
P. O. Box 599
Anderson, Texas 77830
(936) 873-2137
State Bar No. 13737650

## IDENTITY OF PARTIES AND COUNSEL

**ATTORNEYS FOR THE STATE OF TEXAS**

Tuck McLain
District Attorney
Grimes County, Texas
P.O. Box 599
Anderson, Texas 77830
TSB#13737650
(936) 873-2137
(936) 873-2688 fax

**APPELLANT:**

James Allen Bundage
TDC #1925564
McConnell Unit
3001 S. Emily Dr.
Beeville, Texas 78102

**ATTORNEY FOR APPELLANT AT TRIAL**

Frank Blezek
1414 11th St.
Huntsville, Texas 77340

William Bennett
P.O. Box 1748
Madisonville, Texas 77864

**ATTORNEY FOR APPELLANT ON APPEAL**

Mark Maltsberger
216 N. Bryan Ave, Suite 110
Bryan, Texas 77803

**TRIAL JUDGE**

Hon. Donald Kraemer
12th Judicial District Court, Grimes County, Texas
1100 University Ave., Room 303
Huntsville, Texas 77340

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................... ii

Table of Contents ...................................................................................... iii

Index of Authorities .................................................................................. iv

Statement of Case ...................................................................................... 1

Issues Presented.......................................................................................... 2

Statement of Facts...................................................................................... 2

State's Response to Appellant's Issue No. 1 ................................................ 3

       THE TRIAL COURT PROPERLY DENIED APPELLANT'S REQUEST
       FOR A JURY INSTRUCTION ON "VOLUNTARY CONDUCT".

Summary of State's Response to Appellant's Issue No. 1 ............................. 4

Argument and Authorities - State's Response to Appellant's Issue No. 1 ......... 4

State's Response to Appellant's Issue No. 2 ................................................ 7

       THE TRIAL COURT PROPERLY DENIED APPELLANT'S CHALLENGE
       TO THE JURY PURSUANT TO BATSON V KENTUCKY AND ART.
       35.261 TEX. CODE CRIM. PRO.

Summary of Argument - State's Response to Appellant's Issue No. 1 .............. 8

Argument and Authorities - State's Response to Appellant's Issue No.1 ......... 8

Prayer ...................................................................................................... 12

Certificate of Service ................................................................................ 13

Certificate of Compliance ......................................................................... 13

# INDEX OF AUTHORITIES

**STATE CASES**

Brown v. State, 906 S.W.2d 565, 568 (Tex.App.-
Houston [14th Dist.] 1995) ............................................................................. 7

Dockery v. State, 542 S.W.2d 644, 649 (Tex.Cr.App.1976) ............................................... 5

Gerber v. State, 845 S.W.2d 460, 467 (Tex.App.-
Houston [1st Dist.] 1993, pet. ref'd) ............................................................... 7

Gibson v. State, 144 S.W.3d 530, 534 (Tex.Crim.App.2004) .................................. 10, 11

Goldberg v. State, 95 S.W.3d 345, 385 (Tex.App.–
Houston [1st Dist.] 2002, pet. ref'd) .............................................................. 11

Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997) ............................................. 11

Joiner v. State, 696 S.W.2d 68 (Tex.App. -
San Antonio 1985, pet. granted, rev'd) ........................................................... 6

Joiner v. State, 727 S.W.2d 534 (Tex Crim App. 1987) .................................................. 5

Rodgers v. State, 2004 WL 2363830, (Tex.App.-
Houston [1 Dist.] - 2003) ................................................................................. 7

Satterwhite v. State, 858 S.W.2d 412, 415 (Tex.Crim.App.1993) .................................. 10

Smith v. State, 676 S.W.2d 379, 387 (Tex.Crim.App.1984) ............................................ 10

Stiles v. State, 520 S.W.2d 894 (Tex.Cr.App.1975) ........................................................ 5

Whitsey v. State, 796 S.W.2d 707, 713 (Tex.Crim.App.1989) ......................................... 9

Williams v. State, 630 S.W.2d 640, 644 (Tex.Cr.App.1982) ........................................... 5

Williams v. State, 804 S.W.2d 95, 97 (Tex.Cr.App. 1991) ............................................. 8

**FEDERAL CASES**

Hernandez v. New York, 500 U.S. 352, 358, 360 111 S.Ct. 1859,
114 L.Ed.2d 395 (1991) .................................................................................. 9

Miller–El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ................... 9

Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769,
131 L.Ed.2d 834 (1995) ....................................................................................... 10

**RULES, CODES, AND STATUTES**
Penal Code Sec. 6.01(a) ....................................................................................... 4, 5

NO. 01-14-00522-CR
IN THE COURT OF APPEALS

FIRST SUPREME JUDICIAL DISTRICT

AT HOUSTON, TEXAS
*******************

JAMES ALLEN BUNDAGE
Appellant

V.

THE STATE OF TEXAS
Appellee

*******************
Appeal from the
12th District Court of Grimes County, Texas
Trial Cause No. 17,304

*******************
STATE'S BRIEF

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS:

Now Comes, The State of Texas, and submits this brief in support of its prayer for affirmation of the jury finding of guilty for murder. Having elected to have the Court assess punishment appellant was sentenced to confinement for thirty-five (35) years in the Texas Department of Criminal Justice - Institutional Division.

**STATEMENT OF THE CASE**

On December 13, 2012 in cause number 17,304, appellant was indicted for capital murder. After the State having waived the death penalty, a jury was empaneled on the

Page 1 of 13

January 7, 2014 and appellant's trial began that same date. On January 10, 2014, the jury found appellant guilty of the lesser included offense of murder. Pursuant to the appellant's election, punishment was assessed by the trial court. A sentencing hearing was held on May 19, 2014 whereupon appellant was sentenced to thirty-five (35) years confinement in the Texas Department of Criminal Justice - Institutional Division.

Appellant timely filed his notice of appeal on May 27, 2014.

## ISSUES PRESENTED

The State will not reiterate appellant's *Issues Presented*.

## STATEMENT OF FACTS

The State will adopt Appellant's *Statement of Facts* except to supplement when appropriate. As stated in *Appellant's Brief*, on September 24, 2012, James Bundage shot Patrick McHale between the eyes with a .30-30 rifle in Grimes County, Texas. (State's Exhibit #39)(interview of Appellant). Death was instantaneous. (4 RR 103). Years of bad blood existed between these neighbors who shared a fence line. (3 RR 77-82, 4 RR 7-13). McHale operated a dog training facility on his property. (3 RR 74-77). Bundage lived alone on family land that adjoined the McHale property. (3 RR 74). Bundage had previously been convicted of disorderly conduct in regards to a prior incident between the neighbors. (4 RR 8-20; see State's Exhibit #38).

On the morning of McHale's death, McHale had contacted the Grimes County Sheriff's Department to complain of Bundage's actions. (3 RR 86-91). Deputy Mike Beweley

was dispatched to Stoneham, Texas and learned of the alleged cross words and actions of Bundage directed toward McHale and his wife earlier that morning. (3 RR 36-37). Beweley attempted to interview Bundage at this time but was unable to locate him. (3 RR 37-42). Shortly thereafter, Beweley was dispatched to return to Stoneham following a 911 call from McHale's property. (3 RR 46). The 911 recording captured the audio of the shooting (State's Exhibit #5). Upon his arrival, Beweley discovered the dead body of Patrick McHale. (3 RR 48-49). Bundage was not at the scene when Deputy Beweley arrived. Beweley secured the scene until other officers arrived whereupon a search of the are for Bundage was conducted. Law enforcement was unable to locate Bundage. He had apparently fled the scene and was in hiding. Subsequently, a warrant was issued for James Bundage (4 RR 49-50), Later that evening, Bundage entered his residence without the knowledge of law enforcement watching the residence. As he was "slipping" out of the residence, he was spotted by a Deputy. Bundage was holding a .30-30 rifle and supplies while attempting to sneak away from the his residence (3 RR 180-184). Bundage was immediately arrested. As he was being arrested, Bundage told Deputies the shooting was an accident (3 RR 185). After his arrest, Bundage confessed to causing the death of Patrick McHale but claimed that it was an accident. (4 RR 62-63, see State's Exhibit #39).

## STATE'S RESPONSE - APPELLANT'S ISSUE NO. 1

**THE TRIAL COURT PROPERLY DENIED APPELLANT'S REQUEST FOR A JURY INSTRUCTION ON "VOLUNTARY CONDUCT".**

### *Summary of Argument - Stae's Response to Appellant's Issue No. 1:*

Appellant requested the jury be instructed on the law of "voluntary conduct". Appellant's request was based on appellant's statement when arrested that "it was an accident" along with appellant's statement during his post arrest interview that it was an accident. Appellant contended the simple expression that the shooting was a n accident was sufficient to warrant the charge. The trial court denied the instruction.

The concept of "accident" is now partly performed by the requirement of Penal Code Sec. 6.01(a). However, the mere assertion that a shooting was an "accident" does not require an instruction on "voluntary conduct". To be entitled to an instruction on involuntary conduct, there must be evidence of an independent event, such as the conduct of a third party, which could have precipitated the discharge of the weapon. As a result, an appellant's bare assertion that a killing was accidental does not raise the issue of voluntariness. In the case at bar, there is not a scintilla of evidence to support appellant's assertion that the murder was an accident. Without some evidence of an involuntary act, appellant was not entitled to the instruction. The trial court properly denied appellant's request for an instruction on "voluntary conduct"

### *Argument and Authorities - State's Response to Appellant's Issue 1:*

Appellant properly describes the standard of review and general law concerning the analysis of an objected to charging error. For the sake of argument, the State agrees appellant's trial counsel properly preserved error and it is ripe for review. Appellant

complains that the trial court erred in failing to give a requested jury instruction on "voluntary conduct" based on appellant's bare assertion that the shooting was an "accident". Appellant offers no evidence of "accident" other than his self serving statement it was an accident. Appellant seems to imply that this mere assertion somehow necessitates an instruction on "voluntary conduct."

In discussing the distinction between "voluntariness" and "accident" and the genesis of the law related to these concepts, the Court of Criminal Appeals stated as follows:

> Under the former penal code there was a defense of accident, which properly applied to cases in which the defendant's act was not "intentional." Stiles v. State, 520 S.W.2d 894 (Tex.Cr.App.1975). It must be recognized that the term "intentional" had a much different meaning in the law of accident under the former penal code than it now has in the law of culpable mental states under the present penal code. See Dockery v. State, 542 S.W.2d 644, 649 (Tex.Cr.App.1976). In the former law of accident, the term "intentional" meant something like "voluntary." Therefore, the correct meaning of the former term "accident" was that the actor did not voluntarily engage in conduct. But, "accident" was also used under the former penal code to describe a hodgepodge of defenses, including the absence of a culpable mental state, conduct which was voluntary but that differed from the intended conduct, mistake of fact, and an unexpected result. See Dockery v. State, 542 S.W.2d 644, 650 (Tex.Cr.App.1976) (Odom, J., dissenting). It is understandable that the drafters of the present penal code rejected a term which had so many meanings in law, as well as in popular usage, that it served to confuse issues rather than to clarify them. Williams v. State, 630 S.W.2d 640, 644 (Tex.Cr.App.1982);

As such, "accident" is not a defense recognized in the law today contrary to appellant's implication. The concept of "accident" is now partly performed by the requirement of Penal Code Sec. 6.01(a) that "[a] person commits an offense only if he voluntarily engages in conduct...." Williams at 644; Dockery. 649–50.

In Joiner v. State, 727 S.W.2d 534 (Tex Crim App. 1987), the Court of Criminal Appeals addressed this issue with facts very similar to the case at bar. The defendant in Joiner pulled out a pistol when confronting his victim in a bathroom and shot her. After shooting her, the defendant stated "it was accident". The Court of Criminal Appeals, in reversing the lower court, favorably quoted Judge Butts dissent in the court of appeals opinion. Judge Butts describes why an instruction on "voluntary conduct' was inappropriate:

> Even if we assume as true in this case the unintended but fatal discharge of the gun pointed unlawfully at the deceased, the fact remains the intentional pointing of the weapon was a voluntary act and the resulting death is imputable to the appellant, who carried the gun concealed on his person, who drew the gun, who pointed it at the deceased from two to three inches distance, and who shot her in the face. There was no evidence of a scuffle, of the deceased's striking him or the gun, or of any other movement not willed by appellant. This is clearly voluntary conduct as contemplated by the statute, [V.T.C.A., Penal Code Sec. 6.01(a) ] Joiner at 537 quoting Joiner v. State, 696 S.W.2d 68 (Tex.App.—San Antonio 1985) Judge Butts Dissent.

The Court of Criminal Appeals went on to hold:

> We hold that on the facts of this case a charge on absence of voluntary conduct was not required. As previously noted, appellant did not testify; thus, the only evidence that even remotely raised the issue was the bare statement, "It was an accident." There was no explanation of what the "it" was: the statement could have meant that appellant intentionally fired the revolver but did not intend to hit her; or, he intended to hit her but not kill her; or, the act of firing the revolver was unintentional. Joiner at 537.

This very court, faced with a similar set of facts, addressed this issue properly following Joiner by stating.

> Appellant's bare assertion that the firing of the pistol was accidental does not raise the issue of voluntariness. An accused's testimony that a weapon "accidentally went off" or that he "didn't intend to shoot but that it was an

accident," does not raise the issue of the voluntariness of his conduct. Gerber v. State, 845 S.W.2d 460, 467 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd); see also Joiner v. State, 727 S.W.2d 534, 536 (Tex.Crim.App.1987) (holding that request for instruction on voluntariness was properly denied because bare assertions of lack of intent and accidental discharge do not raise issue of absence of voluntary conduct).

To be entitled to an instruction on involuntary conduct there must be "evidence of an independent event, such as the conduct of a third party, which could have precipitated the discharge of the bullet." Brown v. State, 906 S.W.2d 565, 568 (Tex.App.-Houston [14th Dist.] 1995), aff'd, 955 S.W.2d 276 (Tex.Crim .App.1997). Rodgers v. State, 2004 WL 2363830, (Tex.App.-Hous. [1 Dist.] - 2003)

In the case at bar, appellant did not testify. His recorded statement to law enforcement made the night of the murder merely had an assertion that the shooting was an accident (State's Exhibit #39) . Appellant admitted shot the victim with a 30-30 lever action rifle. Appellant acknowledged loading the gun (State's Exhibit #39) . Walking over to the victim's property and confronting him with the rifle (State's Exhibit #39) . Appellant admits he chambered the gun and, at some point "cocked" the hammer (State's Exhibit #39) . The evidence adduced at trial was that the "trigger pull' on the rifle was 5 ½ - 6 ½ pounds (RR vol 4 pp 34). Appellant admitted shooting at appellant but denied "intending" to kill him (State's Exhibit #39). There was no evidence from any source that there was a scuffle, of anyone striking the gun or of any other force other than appellant's own actions causing the gun to be fired (State's Exhibit #39). Additionally, the shooting was actually recorded via a 911 call made by the deceased before the shooting (State's Exhibit #5). It is clear from the 911 recording, in which the fatal shot can be heard, that there was no struggle, no intervening

force, nothing that would have caused appellant actions to be "involuntary" or "accidental".

As in <u>Joiner</u> and <u>Rogers</u> above, the only evidence appellant brings to the court justifying his request for an instruction on voluntariness is the "bare assertion" that "it" was an accident. Such "evidence" wholly fails to raise the issue and justify the charge. The trial court properly denied appellant's request for a charge on voluntariness.

## STATE'S RESPONSE - APPELLANT'S ISSUE NO. 2

## THE TRIAL COURT PROPERLY DENIED APPELLANT'S CHALLENGE TO THE JURY PURSUANT TO <u>BATSON V KENTUCKY</u> AND ART. 35.261 TEX. CODE CRIM. PRO.

### *Summary of Argument - State's Response to Appellant's Issue No. 2:*

The State was challenged for using 3 of its strikes to strike 3 venire men that were African American. The State offered race neutral reasons for each of the strikes. None of the State's race neutral reason were rebutted by appellant and the trial court accepted the prosecutors explanations as race neutral and denied appellants challenge.

### *Argument and Authorities - State's Response to Appellant's Issue 2:*

Appellant's description of the prevailing law on the requirements to preserve error and the courts standard of review is correct as it relates to a *Batson Challenge*. However appellant simply makes a conclusory statement that the State's race neutral reasons for each strike were "invalid explanations." Appellant asserts the State, therefore, failed to meet its burden in providing race neutral reason for any strikes they utilized against a member of a racial minority. As appellant stated, the Texas Court of Criminal Appeals has held that

Batson contemplates a scheme of shifting burdens, whereby

> 1. Appellant has the initial burden of proof to establish a prima facie case of purposeful discrimination
> 2. Burden (termed a burden of production) then shifts to the challenging party to supply a race-neutral explanation for the peremptory challenge(s)
> 3. Burden (termed a burden of persuasion) next shifts back to the movant to rebut the challenging party's explanations so that it can be rationally inferred that the challenging party engaged in purposeful racial discrimination. <u>Williams v. State</u>, 804 S.W.2d 95, 97 (Tex.Cr.App. 1991).

Appellant objected to three of the State's strikes claiming they were based on race. Appellant complained of the State's strike of Juror No. 42, Nicholas, Juror No. 36, Lewis, and Juror No. 5, Johnson (RR Vol 2, pp 222). The State did not challenge the defenses assertion that the venire men were of a protected class and the complained of venire men were African-American as is appellant. Appellant met the first step of a proper *Batson Challenge*. The State, essentially agreeing that the appellant had met their *prima facie* burden then offered it's race neutral reasons. The State responded that Juror No. 42, Nicholas had a short employment history, was young (under 30) and had no ties to the community (only a resident for a few months). A race-neutral explanation is one based on something other than the race of the venire men. <u>Hernandez v. New York</u>, 500 U.S. 352, 358, 360 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). At this step of the inquiry, the issue is simply the facial validity of the prosecutor's explanation. Id. Unless discriminatory intent is inherent in the explanation, the offered reason is race neutral. Clearly the prosecutors explanation was race neutral. In the third step, the court must determine whether the defendant proved purposeful discrimination. The trial judge must evaluate the facially race-neutral reasons

given by the prosecutor to determine whether those explanations are genuine or merely a pretext for purposeful discrimination. Whitsey v. State, 796 S.W.2d 707, 713 (Tex.Crim.App.1989). Batson affords the State an opportunity to give its reason for striking a venire men, but requires the court to "assess the plausibility of that reason in light of all evidence with a bearing on it. Miller–El v. Dretke, 545 U.S. at 252, 125 S.Ct. 2317.

After providing this race neutral reason, the burden shifts to appellant to rebut the State's reasoning. Appellant offered no additional evidence indicating that any non-African American jurors with Juror 42's "profile" were not struck by the State or allowed on the jury. There was no evidence adduced by witnesses nor presented in the record indicating the State's reasoning was, in any way, a pretext. As a result, the appellant wholly failed to rebut the State's reasoning.

In reviewing Batson challenges, courts have held that the reviewing court examines jury selection from a cold record. Satterwhite v. State, 858 S.W.2d 412, 415 (Tex.Crim.App.1993). The trial court, unlike a reviewing court, has the opportunity to view each venire men's demeanor and to evaluate his or her credibility and, ultimately, is in the better position to pass on the challenges for cause presented. Satterwhite, 858 S.W.2d at 415 (citing Smith v. State, 676 S.W.2d 379, 387 (Tex.Crim.App.1984)). Consequently, a reviewing court should not reverse a trial court's ruling on a Batson challenge unless it is clearly erroneous. See Gibson v. State, 144 S.W.3d 530, 534 (Tex.Crim.App.2004). To hold that a trial court clearly erred, the reviewing court must have a "definite and firm conviction

that a mistake has been committed." <u>Goldberg v. State</u>, 95 S.W.3d 345, 385 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd). The reviewing court should not substitute it's opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes, and we focus on the genuiness, rather than the reasonableness, of the prosecutor's asserted nonracial motive. <u>Gibson</u>, 144 S.W.3d at 534 n. 5 (citing <u>Purkett</u>, 514 U.S. at 765, 115 S.Ct. at 1771–72). The appellate court must give great deference to the trial court's determination, and view the evidence in the light most favorable to the trial court's ruling. <u>Gibson</u>, 144 S.W.3d at 534 n. 6 (citing <u>Guzman v. State</u>, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). In the case at bar, the trial court clearly accepted the prosecutors race neutral explanations and no evidence in the record a adduced by appellant contradicts the prosecutors race neutral explanation.

Likewise, the State went on to explain it's strike of Juror No. 36, Lewis by indicating Lewis was seen waving at the defendant when entering the courtroom and that they gave each other the "thumbs up". This was unrebutted by appellant. Furthermore, the State testified that during questioning, Juror 36 denied knowing the defendant. (RR Vol 2, pp 222-223). Once again, appellant failed to offer any evidence challenging the State's proffer or indicating the race neutral reasons were a pretext.

Finally, the State explained it's strike of Juror No 5, Johnson, indicating their decision was based on multiple criminal charges the State was aware of against Juror No. 5. Once again, appellant failed to offer any rebuttal for this race neutral reason.

In his brief, appellant's only attempt to claim appellant made any rebuttal to the State's race neutral explanations is a reference to a statement made BEFORE appellant even made his Batson challenge based on race. Appellant's attempt at a Batson challenge to challenge the State's strikes based on gender. This tactic failed when it was pointed out the ENTIRE JURY WAS FEMALE! (RR Vol 2 pp 223-224). The state had struck at least four males and appellant had also struck every male in the strike zone. In support of this argument that the State was trying to eliminate all women as well as all people of color, appellant's trial counsel made an "off hand" and unsubstantiated comment that the state couldn't strike all of the women because they were trying to also strike all of the blacks. Appellant's made no offer of any proof to substantiate his side bar comment. Of course, this absurd assertion was completely unsupported by any facts and amounted to no more than an improper sidebar. This statement was also made some time PRIOR to appellant's charge that the State struck jurors based on race and prior to the State's offer of their race neutral explanations. Such a sidebar made before the State even makes its race neutral explanation can not be seriously considered a response to the State unless appellant's trial counsel is prescient. As a result, appellant failed to rebut any of the State's race neutral explanations and, therefore, the trial court properly denied appellant's motion to have those jurors seated.

## PRAYER

Based on the above, the State of Texas, by and through her District Attorney, prey that this Honorable Court uphold the jury's verdict and affirm Appellant's convictions for Murder

and subsequent sentence of confinement for thirty-five (35) years in the Institutional Division of the Texas Department of Criminal Justice.

Respectfully submitted:<br>
/S/ Tuck McLain<br>
Tuck McLain<br>
District Attorney - 506th Judicial District<br>
P.O. Box 599<br>
Anderson, Texas 77830<br>
Phone: (936) 873-2137<br>
Fax: (936) 873-2688<br>
TSB# 13737650

## CERTIFICATE OF SERVICE

I, Tuck McLain, District Attorney, Grimes County, Texas do hereby certify that a true and correct copy of the foregoing *State's Brief* was sent via U.S. Mail, CMRRR to Counsel for Appellant, Mark Maltsberger, 216 N. Bryan Ave., Suite 110, Bryan, Texas, 77803 and via email to mmaltsberger@mmaltsberger.com on March 31, 2015.

/S/ Tuck McLain<br>
Tuck McLain<br>
District Attorney - 506th Judicial District

## CERTIFICATE OF COMPLIANCE

I, Tuck Moody McLain, do hereby certify that the forgoing State's Brief complies with Rule 9.4 (i)(2) Tex. Rule A. Pro. and contains three thousand thirty-two (3032) words.

/S/ Tuck McLain<br>
Tuck Moody Mclain